Robert C. HANEY, Appellant,

v.

NORTH DAKOTA WORKERS COMPENSATION BUREAU, Appellee.

Civ. No. 930324.

Supreme Court of North Dakota.

June 15, 1994.

Mark G. Schneider, of Schneider, Schneider & Schneider, Fargo, for appellant.

Ken R. Sorenson, Asst. Atty. Gen., North Dakota Workers Compensation Bureau, Bismarck, for appellee.

SANDSTROM, Justice.

In this case we address the constitutionality of the agricultural exemption from workers compensation coverage. A farm worker appeals from a district court judgment affirming a North Dakota Workers Compensation Bureau order denying benefits. We conclude the agricultural exemption in the workers compensation law does not violate the equal protection guarantee of the North Dakota Constitution and affirm.

## I

Robert C. Haney, a farm laborer, injured his back while cleaning grain storage facilities for Grindberg Farms. Haney applied for workers compensation benefits. The bureau initially concluded it did not have jurisdiction and dismissed Haney's claim. After a formal hearing held at Haney's request, the bureau found Haney injured his back while performing agricultural-related activities for his employer, Grindberg Farms. The bureau concluded N.D.C.C. § 65–01–02(21)(a) [now § 65–01–02(22)(a)] "exempts agricultural employees from hazardous employment within the meaning of the North Dakota Workers Compensation Act"; Grindberg Farms did not have workers compensation coverage for agricultural employees; and the bureau "lacks jurisdiction over this matter and therefore the claimant is not entitled to the receipt of workers compensation benefits." The district court affirmed the bureau's denial of benefits. Haney appeals the bureau's decision.

## II

Section 65–01–01, N.D.C.C., sets forth the legislative purpose behind North Dakota's Workers' Compensation program:

"*65–01–01. Purposes of compensation law—Police power.* The state of North Dakota, exercising its police and sovereign powers, declares that the prosperity of the state depends in a large measure upon the well-being of its wage workers, and, hence, for workers injured in hazardous employments, and for their families and dependents, sure and certain relief is hereby provided regardless of questions of fault and to the exclusion of every other remedy, proceeding, or compensation, except as otherwise provided in this title, and to that end, all civil actions and civil claims for relief for such personal injuries and all jurisdiction of the courts of the state over such causes are abolished except as is otherwise provided in this title."

N.D.C.C. § 65–01–02(22)(a) defines "hazardous employment" as:

"[A]ny employment in which one or more employees are employed regularly in the same business or in or about the establishment except:

" 'a. Agricultural or domestic service.' "

Haney contends the agricultural exclusion in N.D.C.C. § 65–01–02(22)(a) violates the equal protection guarantee afforded him by Art. I, § 21, N.D. Constitution, which provides:

"No special privileges or immunities shall ever be granted which may not be altered, revoked or repealed by the legislative assembly; nor shall any citizen or class of citizens be granted privileges or immunities which upon the same terms shall not be granted to all citizens."

Haney relies on *Benson v. North Dakota Workmen's Compensation Bureau*, 283 N.W.2d 96 (N.D.1979). In *Benson*, a majority of three concluded the agricultural exclusion violated the equal protection guarantee of Art. I, § 20 [now 21] N.D. Const. The agricultural exclusion was not nullified by the ruling in *Benson* because an insufficient number of justices concurred in the result. Section 88, N.D. Const. [now Art. VI, § 4, N.D. Const.], requires the concurrence of four justices of this Court to declare a statute unconstitutional. *Benson* at 108. *See also Bismarck Public School District # 1 v. State*, 511 N.W.2d 247, 250 (N.D.1994).

### III

#### A

"[A]n Act of the legislature is presumed to be correct and valid, and any doubt as to its constitutionality must, where possible, be resolved in favor of its validity." *Southern Valley Grain Dealers Ass'n v. Board of County Comm'rs*, 257 N.W.2d 425, 434 (N.D. 1977). "A statute enjoys a conclusive presumption of constitutionality unless it is clearly shown that it contravenes the state or federal constitution." *Richter v. Jones*, 378 N.W.2d 209, 211 (N.D.1985). " 'The justice, wisdom, necessity, utility and expediency of legislation are questions for legislative, and not for judicial determination.' " *Manikowske v. North Dakota Workmen's Compensation Bureau*, 338 N.W.2d 823, 825

(N.D.1983), quoting *Asbury Hospital v. Cass County*, 72 N.D. 359, 7 N.W.2d 438, 442 Syllabus ¶ 11 (1943).

■ Article I, § 21, N.D. Const., has long been "viewed as our state constitutional guarantee of equal protection under the law." *Matter of Adoption of K.A.S.*, 499 N.W.2d 558, 563 (N.D.1993). Under Art. I, § 21, N.D. Const., not all legislative classifications are unlawful. We review the lawfulness of legislative classifications under three separate standards of review. "The standard used in a particular case depends upon the challenged statutory classification and the right allegedly infringed." *Kadrmas v. Dickinson Public Schools*, 402 N.W.2d 897, 902 (N.D.1987), *aff'd* 487 U.S. 450, 108 S.Ct. 2481, 101 L.Ed.2d 399 (1988).

In *Gange v. Clerk of Burleigh County District Court*, 429 N.W.2d 429, 433 (N.D.1988), this Court outlined the standards of judicial scrutiny for equal protection claims under our state constitution:

"We apply strict scrutiny to an inherently suspect classification or infringement of a fundamental right and strike down the challenged statutory classification 'unless it is shown that the statute promotes a compelling governmental interest and that the distinctions drawn by the law are necessary to further its purpose.' *State ex rel. Olson v. Maxwell*, 259 N.W.2d 621, 627 (N.D.1977). When an 'important substantive right' is involved, we apply an intermediate standard of review which requires a ' "close correspondence between statutory classification and legislative goals." ' *Hanson v. Williams County*, 389 N.W.2d 319, 323, 325 (N.D.1986) [quoting *Arneson v. Olson*, 270 N.W.2d 125, 133 (N.D.1978) ]. When no suspect class, fundamental right, or important substantive right is involved, we apply a rational basis standard and sustain the legislative classification unless it is patently arbitrary and bears no rational relationship to a legitimate governmental purpose. *See State v. Knoefler*, 279 N.W.2d 658, 662 (N.D.1979)."

■ Because no inherently suspect or fundamental interest classifications warranting strict scrutiny are involved in this case, we

must choose between the rational basis standard and the intermediate standard. There is no bright line test for choosing one test over the other. *Hanson v. Williams County,* 389 N.W.2d 319 (N.D.1986).

B

This Court has generally applied the intermediate level of scrutiny to classifications which have completely prevented a class of injured persons from maintaining a Court action to recover for their injuries. *Kavadas v. Lorenzen,* 448 N.W.2d 219, 222–223 (N.D.1989). The rational basis test is usually applied to statutory classifications which involve economic or social matters and do not deprive a class of plaintiffs from access to the courts. *Kavadas.*

In *Benson,* 283 N.W.2d at 99, a majority of this Court concluded the agricultural exclusion affected an important substantive right and adopted the intermediate or close correspondence level of review:

"Although we are not concerned in this case with a limitation on actions for common-law tort remedies, we are concerned with the complete exclusion of a legislatively created remedy for personal injury to one class of employees. Our concern here closely resembles those concerns addressed in cases using the intermediate close-correspondence test (*Herman v. Magnuson,* [277 N.W.2d 445 (N.D.1979) ]; *Arneson v. Olson,* [270 N.W.2d 125 (N.D. 1978) ]; *Johnson v. Hassett,* [217 N.W.2d 771 (N.D.1974) ] ), rather than those cases in which we have applied the traditional rational-basis test. *Tharaldson v. Unsatisfied Judgment Fund,* [225 N.W.2d 39 (N.D.1974) ]. The complete exclusion of agricultural employees from workmen's compensation not only deprives the farm worker of a convenient remedy, it also limits his remedy to a common-law tort action in which the farm worker must prove all elements of a tort before he can recover. Employees covered by workmen's compensation in other similar occupations do not have to make this showing.

"To determine whether the exclusion of agricultural employees from workmen's compensation violates equal protection considerations in this case, there must be a close correspondence between the statutory exclusion and the legislative goals to be accomplished by that exclusion."

The *Benson* majority examined the stated legislative goal of Workers Compensation, to provide sure and certain relief for workers injured in hazardous employment, and concluded "[t]he exclusion of agricultural employees from the benefits of the Workmen's Compensation Act is unreasonable and contrary to the expressed purpose of the Act." *Benson* at 107. The *Benson* majority recognized only the stated legislative goal of providing sure and certain relief and ignored any other goals the legislature may have had. The Court said the agricultural exclusion was designed to benefit only employers and not employees:

"The North Dakota Legislature explicitly expressed the purpose of the Act but the exclusion of agricultural services has no correspondence to that expressed purpose. The legislature made no attempt to express any purpose for the exclusion.

\*     \*     \*     \*     \*     \*

"The record in this case contains a considerable amount of material relating to the subject of the agricultural exclusion and, together with numerous writings (see e.g., 1B Larson, *Workmen's Compensation Law, Farm Labor,* § 53), compels the conclusion that the purpose for the exclusion of agricultural services was not for the benefit of the employees but for the employers."

*Benson,* 283 N.W.2d at 103. The *Benson* majority concluded:

"Because of the exclusion, the Act withholds from agricultural employees the sure and certain relief awarded to other wage earners. There is no correspondence between the purpose of the Act and the agricultural classification. There are no proper and justifiable distinctions between agricultural employees and nonagricultural employees in relation to the risk of injury from employment."

*Benson.* The Court held the agricultural exclusion is unconstitutional.

## C

■ Disagreeing with the foregoing bases of the majority opinion in *Benson,* we overrule the *Benson* decision.

We disagree with the *Benson* majority's conclusion that the rights involved in analyzing the agricultural exclusion "closely resembles those concerns addressed in cases using the intermediate close-correspondence test (*Herman v. Magnuson, supra; Arneson v. Olson, supra; Johnson v. Hassett, supra*), rather than those cases in which we have applied the traditional rational-basis test. *Tharaldson v. Unsatisfied Judgment Fund, supra.*"

*Herman v. Magnuson,* 277 N.W.2d 445 (N.D.1979), and *Johnson v. Hassett,* 217 N.W.2d 771 (N.D.1974), cited in *Benson,* were cases in which this Court applied the intermediate level of scrutiny to classifications which prevented certain classes of injured persons from suing for damages. *Bellemare v. Gateway Builders, Inc.,* 420 N.W.2d 733 (N.D.1988), *Hanson v. Williams County,* and *Patch v. Sebelius,* 320 N.W.2d 511 (N.D.1982), are other cases in which this Court applied the intermediate level of scrutiny to classifications which prevented certain classes of injured persons from suing for damages. *Arneson v. Olson,* 270 N.W.2d 125 (N.D.1978), cited in *Benson,* was a case in which this Court applied the intermediate level of scrutiny in ruling that a $300,000 limitation on recoveries in medical malpractice cases was a denial of equal protection. This Court has also applied the intermediate level of scrutiny to classifications with state constitutional underpinnings, such as homestead rights, *Mund v. Rambough,* 432 N.W.2d 50 (N.D.1988); and to classifications involving a defendant's wealth and interests in presenting a defense in criminal prosecutions, *State v. Fischer,* 349 N.W.2d 16 (N.D. 1984); *State v. Carpenter,* 301 N.W.2d 106 (N.D.1980).

*Tharaldson v. Unsatisfied Judgment Fund,* 225 N.W.2d 39 (N.D.1974), cited by the *Benson* majority as a case not closely resembling the concern in *Benson,* was a case in which this Court applied the rational basis test to a statute limiting recovery from the unsatisfied judgment fund to $5,000 if the wrongdoer could not be identified, while permitting a $10,000 recovery from the fund in other cases. This Court has applied the rational basis test to a number of other statutory classifications involving economic or social matters. *See Mauch v. Manufacturers Sales & Service, Inc.,* 345 N.W.2d 338 (N.D. 1984) (comparative negligence provisions of N.D.C.C. § 9–10–07); *Law v. Maercklein,* 292 N.W.2d 86 (N.D.1980) (statutory classification allowing only residents to participate in the Unsatisfied Judgment Fund); *Kadrmas v. Dickinson Public Schools* (statutory classification between reorganized and nonreorganized school districts, with only non-reorganized school districts being authorized to charge patrons for transportation to and from schools); *Kavadas v. Lorenzen* (statutory classification allowing a person injured by two or more tortfeasors acting in concert to recover under joint and several liability, while denying joint and several recovery to a person injured by two or more tortfeasors not acting in concert); and *Lee v. Job Service North Dakota,* 440 N.W.2d 518 (N.D.1989) (statutory classification for unemployment compensation benefits classifying full-time students differently than workers who are not full-time students).

The workers compensation law creates a fund from a tax on covered employers and provides for the distribution of economic benefits from the tax to injured employees of the taxpaying employers. Workers compensation benefits, like unemployment compensation benefits, "fall within 'the field of social welfare and economics.'" *Lee* at 519, quoting *Idaho Dept. of Employment v. Smith,* 434 U.S. 100, 101, 98 S.Ct. 327, 328, 54 L.Ed.2d 324, 327 (1977). *See also Otto v. Hahn,* 209 Neb. 114, 306 N.W.2d 587, 592 (1981), in which the workers compensation act was treated as being "in the area of economics and social welfare." The agricultural exclusion from workers compensation coverage is "an issue with economic implications" (*Kavadas v. Lorenzen,* 448 N.W.2d at 223) that does not preclude anyone from suing for damages.

The concerns involved in excluding agricultural service from workers compensation much more closely resemble those in cases in

which we have applied the rational basis test to classifications contained in economic and social legislation, than those in cases in which we have applied the close correspondence test. In our view, as in *Kadrmas v. Dickinson Public Schools,* 402 N.W.2d at 902, "the challenged statute in this case is purely economic legislation which neither involves a suspect classification nor a fundamental or important substantive right which would require the strict scrutiny or intermediate standard of review." The challenged statute also does not involve any classifications with state constitutional underpinnings, wealth, or the vital interests involved in presenting a defense in a criminal prosecution, which might warrant a heightened level of review. This Court has " 'consistently deferred to legislative determinations concerning the desirability of statutory classifications affecting the regulation of economic activity and the distribution of economic benefits.' " *Lee v. Job Service North Dakota,* 440 N.W.2d at 519, quoting *Idaho Dept. of Employment v. Smith.* We conclude the rational basis test is the appropriate standard of review to apply in assessing the validity of the agricultural exclusion from mandatory workers compensation coverage in light of the equal protection guarantee of Art. I, § 21, N.D. Const.

### D

In urging the intermediate level of scrutiny, Haney relies, in addition to *Benson,* on this Court's decision in *Lee v. Job Service North Dakota,* 440 N.W.2d at 519, which applied the rational basis test to a classification relating to unemployment compensation benefits, and distinguished workers compensation benefits:

> "Unemployment benefits are a matter of legislative grace. Section 52–01–06, N.D.C.C. *Accord, Dow Chemical Co. v. Curtis,* 431 Mich. 471, 430 N.W.2d 645 (1988). They may be contrasted to and differentiated from workers compensation benefits, for which injured workers give up the right to sue for damages arising out of a work-related injury in exchange for 'sure and certain relief ... regardless of questions of fault' (§ 65–01–01, N.D.C.C.)."

From that language, Haney argues:

> "The obvious import of the distinction made in *Lee, supra,* is that important substantive rights are implicated by legislative schemes which exclude certain classes of employees from eligibility for workers' compensation. Since 'important substantive rights' are the touchstone of the applicability of the intermediate standard of review [citation omitted] the fate of the agricultural exclusion statute must be determined under the intermediate scrutiny standard."

■ Haney's reliance on *Lee* is misplaced. The important substantive right involved in the workers compensation scheme is the right to sue for damages, which injured workers were required to give up in exchange for sure and certain relief, regardless of questions of fault. Here, the statute in issue does not deny injured agricultural employees the important substantive right to sue their employers for damages arising out of work-related injuries; rather, the statute preserves that right for agricultural employees by excluding agricultural service from mandatory workers compensation coverage. We note that the value of the exchange of the right to sue for the right to sure and certain relief is not as great as it once was to employees. In 1973, the legislature adopted the doctrine of comparative negligence ameliorating the harsh effects of the defenses of contributory negligence and assumption of risk. *See* S.L.1973, Ch. 78; *Wentz v. Deseth,* 221 N.W.2d 101, 104–05 (N.D.1974). The subject is now governed by N.D.C.C. § 32–03.2–02, which provides in part:

> "Contributory fault does not bar recovery in an action by any person to recover damages for death or injury to person or property unless the fault was as great as the combined fault of all other persons who contribute to the injury, but any damages allowed must be diminished in proportion to the amount of contributing fault attributable to the person recovering."

Prior to the change in the law in 1973, any contributory negligence on the part of the person suing for damages was a complete bar to recovery of any damages. *Mauch v. Manufacturers Sales & Service, Inc.; Renner v. Murray,* 136 N.W.2d 794 (N.D.1965); *Sher-*

*lock v. Minneapolis, St. P. & S.S.M. Ry. Co.,* 24 N.D. 40, 138 N.W. 976 (1912). Regardless of its value to employers or employees, a legislative decision to extend workers compensation coverage to any group is "a matter of legislative grace" (*Lee v. Job Service North Dakota,* 440 N.W.2d at 519). Because the legislature created the remedy of workers compensation benefits, it can impose reasonable limits on it. *See Herman v. Magnuson,* 277 N.W.2d at 451.

IV

■ The rational basis test is a relaxed standard of review. As we summarized in *Lee v. Job Service North Dakota,* 440 N.W.2d at 519–20:

"Under the rational basis standard of review, a legislative classification will be sustained unless it is patently arbitrary and bears no rational relationship to a legitimate government interest. *Hanson v. Williams County, supra,* 389 N.W.2d at 323. 'A classification does not deny equal protection "if any state of facts reasonably can be conceived that would sustain it." ' *Grand Forks–Traill Water Users, Inc. v. Hjelle,* 413 N.W.2d 344, 348 (N.D.1987) [quoting *Signal Oil & Gas Co. v. Williams County,* 206 N.W.2d 75, 83 (N.D.1973) ]. 'Through what precise points in a field of many competing pressures a legislature might most suitably have drawn its lines is not a question for judicial re-examination.' Syllabus ¶ 6, *State v. Gamble Skogmo, Inc., supra* [144 N.W.2d 749 (N.D.1966) ]. A classification with a reasonable basis does not violate the equal protection clause merely 'because in practice it results in some inequality.' *Ohio Bureau of Employment Services v. Hodory,* 431 U.S. 471, 491, 97 S.Ct. 1898, 1909, 52 L.Ed.2d 513, 528 (1977) [quoting *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369, 377 (1911) ]."

Reform may take one step at a time. *Snyder's Drug Stores, Inc. v. North Dakota State Bd. of Pharmacy,* 219 N.W.2d 140, 148 (N.D. 1974); *State v. Gamble Skogmo, Inc.,* 144 N.W.2d 749, 760 (N.D.1966). "[A] court need not know the special reasons, motives, or policies of a State legislature in adopting a particular classification, so long as the policy

is one within the power of the legislature to pursue, and so long as the classification bears a reasonable relation to those reasons, motives, or policies." *Signal Oil & Gas Co. v. Williams County,* 206 N.W.2d 75, 83 (N.D. 1973). "[T]he Equal Protection Clause does not demand for purposes of rational-basis review that a legislature or governing decisionmaker actually articulate at any time the purpose or rationale supporting its classification." *Nordlinger v. Hahn,* —— U.S. ——, ——, 112 S.Ct. 2326, 2334, 120 L.Ed.2d 1, 15–16 (1992). "While a governmental decisionmaker need not have articulated a purpose for a classification, for purposes of judicial review there must be an identifiable purpose that may conceivably or reasonably have been that of the governmental decisionmaker." *NL Industries, Inc. v. North Dakota State Tax Comm'r,* 498 N.W.2d 141, 149 (N.D.1993).

To determine if the legislative classification in issue here bears a rational relationship to a legitimate government interest, we must now examine the purpose or purposes underlying the legislature's adoption of the workers compensation act with an exclusion for agricultural service. As we have already noted, the *Benson* majority recognized only the specifically stated legislative goal of providing "for workers injured in hazardous employments ... sure and certain relief ... regardless of questions of fault and to the exclusion of every other remedy, proceeding, or compensation" (N.D.C.C. § 65–01–01) and ignored any other purposes the legislature may have had, noting that it "made no attempt to express any purpose for the exclusion." *Benson* at 103.

Agricultural employers and employees are excluded from mandatory coverage of the workers compensation law because agricultural service is not classified as hazardous employment. N.D.C.C. § 65–01–02(22)(a). We know agricultural work is hazardous. *See Benson.* We recognize, as did the court in *Otto v. Hahn,* 306 N.W.2d at 590, that agriculture was excluded from workers compensation coverage for a different reason:

"It becomes apparent that farm laborers were excluded from the act not because farming is nonhazardous but because the

Legislature chose not to extend the coverage of the act to that class for a possibly political or social reason."

Unarticulated legislative purposes may be considered in an equal protection analysis of a statutory classification. *Nordlinger v. Hahn; NL Industries, Inc.; Signal Oil & Gas Co. v. Williams County.* In light of the agricultural exclusion, it is clear to us the legislature had a two-part purpose in mind, one part articulated and one part unarticulated, in enacting the workers compensation law. The legislature sought to provide "for workers injured in hazardous employments ... sure and certain relief ... regardless of questions of fault," N.D.C.C. § 65–01–01 (the articulated part of the legislature's purpose), without adversely affecting the financial health of agricultural employers and employees, who comprise the most important sector of the North Dakota economy (the unarticulated part of the legislature's purpose). With regard to the *Benson* majority's conclusion "that the purpose for the exclusion of agricultural services was not for the benefit of the employees but for the employers" (283 N.W.2d at 103), we can conceive of purposes the legislature may have had in mind to benefit both agricultural employers and agricultural employees. The legislature may have intended to benefit agricultural employers by exempting them from the expense of workers compensation premiums and the expense and inconvenience of the additional recordkeeping that workers compensation coverage would entail. The legislature may have intended to benefit agricultural employees by retarding the mechanization of agriculture, thereby preserving agricultural job opportunities that would be lost if coverage of agriculture hastened the mechanization of the industry. Each of the foregoing "is an identifiable purpose that may conceivably or may reasonably have been the purpose of the" legislature. *NL Industries, Inc. v. North Dakota State Tax Comm'r,* 498 N.W.2d at 149. "The [Legislature] 'may have conceived of' [those] or other good purposes, 'and that is a sufficient basis for sustaining' the [Legislature's] action." *NL Industries, Inc.,* quoting *Snyder's Drug Stores, Inc. v. North Dakota State Bd. of Pharmacy,* 219 N.W.2d at 151.

We conclude there is a rational relationship between the statutory classification and the legitimate government interests in providing sure and certain relief without questions of fault to workers injured in hazardous employments without adversely affecting the financial health of agricultural employers and employees, to the benefit of both. There have been a number of recent cases from other states upholding statutes against the same or similar constitutional challenges as those in this case. *See Collins v. Day,* 604 N.E.2d 647 (Ind.App.1992); *Ross v. Ross,* 308 N.W.2d 50 (Iowa 1981); *Fitzpatrick v. Crestfield Farms, Inc.,* 582 S.W.2d 44 (Ky.App.1978); *Eastway v. Eisenga,* 420 Mich. 410, 362 N.W.2d 684 (1984); *State ex rel. Hammond v. Hager,* 160 Mont. 391, 503 P.2d 52 (1972); *Otto v. Hahn,* 306 N.W.2d at 591–92; *Cueto v. Stahmann Farms, Inc.,* 94 N.M. 223, 608 P.2d 535 (N.M.App.1980); *Baskin v. State ex rel. Workers' Compensation Div.,* 722 P.2d 151 (Wyo.1986). Other than *Benson,* Haney has not drawn our attention to, nor have we found, any decision by any state's highest court or by any federal court holding a state's exclusion of agricultural employers or employees from workers compensation coverage is an unconstitutional denial of equal protection.

The agricultural exclusion in the workers compensation act does not violate the equal protection guarantee of Art. I, § 21, N.D. Const.

Affirmed.

VANDE WALLE, C.J., and NEUMANN, JJ., concur.

RALPH J. ERICKSTAD, Surrogate Judge, sitting in place of LEVINE, J., disqualified.

VANDE WALLE, Chief Justice, concurring specially.

I agree with the dissent that the right to recover for personal injuries is an important substantive right and that the denial of recovery for personal injuries is not simply

social. It is undeniably economic.[1] However, this case is not about the "denial of recovery for personal injuries" caused by the negligence of others. If it were, I would agree with the analysis and join the dissent of Surrogate Judge Erickstad.

If it were a "denial of recovery for personal injury," the "close correspondence" standard of review would certainly apply. *Bellemare v. Gateway Builders, Inc.*, 420 N.W.2d 733 (N.D.1988). The result reached by the majority opinion does not, of course, in any manner impose on Robert Haney's right to recover from Grindberg Farms for any act of negligence on their part which caused his injury. It is for this reason that decisions such as *Hanson v. Williams County*, 389 N.W.2d 319 (N.D.1986) and *Johnson v. Hassett*, 217 N.W.2d 771 (N.D.1974) are inapposite.

Ironically, one of the initial challenges against the workers compensation system was the exclusivity of the remedy, i.e., that those workers covered by the act could not bring an action against the employer, co-employees, third persons, or the workers for injury. *E.g., Tandsetter v. Oscarson*, 56 N.D. 392, 217 N.W. 660 (1928) and *Nyland v. Northern Packing Co.*, 56 N.D. 624, 218 N.W. 869 (1928). Continuing attempts are made to allow the injured worker to bring action directly or indirectly against the employer, co-employee, or third party rather than limiting the worker to seeking compensation for injuries through our worker compensation system. *See, e.g., Schreder v. Cities Service Co.*, 336 N.W.2d 641 (N.D.1983); *Barsness v. General Diesel & Equipment*, 422 N.W.2d 819 (N.D.1988); *Gernand v. Ost Services, Inc.*, 298 N.W.2d 500 (N.D.1980).

Whether or not to cover employers and employees under a worker compensation system is a legislative decision. So too, I believe, is the decision of the workers to be covered. I agree with the majority that the legislative decision is subject to review under a rational basis standard and that there is, as the majority outlines, a rational basis for its decision to exclude farm laborers.

Although the dissent has marshalled persuasive legislative arguments for including agricultural employers within the system, those arguments do not drive our decision. Thus, I agree with Judge Erickstad's footnote number one that in this day it is questionable wisdom from the standpoint of the employer to exclude agriculture from the scope of the worker compensation system.[2] However, that is essentially a legislative matter, not a judicial matter, and it is in the area of legislative discretion that we apply a rational basis standard of review. Once that discretion is exercised, this Court has been deferential to legislative classifications. *See, e.g., Signal Oil and Gas Company v. Williams County*, 206 N.W.2d 75 (N.D.1973). Although the Court has found a classification to be unreasonable and arbitrary where it imposes a *burden* not shared by others, *Hospital Services v. Brooks*, 229 N.W.2d 69 (N.D.1975), we should be more deferential to legislative classification where the legislation involves a program in the nature of social welfare or an entitlement rather than the affirmative imposition of a burden.

Furthermore, this Court has held that when the legislature attempts to resolve a

---

1. The State is not obligated to establish a worker compensation system but has done so in the exercise of its "police and sovereign powers" because "the prosperity of the state depends in a large measure upon the well-being of its wage workers, and, hence, for workers injured in hazardous employments, and for their families and dependents, sure and certain relief is hereby provided regardless of questions of fault and to the exclusion of every other remedy, proceeding, or compensation...." NDCC § 65–01–01. It appears undeniable that the worker compensation system is social welfare, as well as economic, legislation.

2. Were it the agricultural employer who was complaining because the State did not provide protection from a lawsuit claiming damages for the employers negligence, would the issue be viewed differently? Haney has not argued that the statute, section 65–04–29, NDCC, permitting non-covered employers to elect coverage and the employee of such employers who elect coverage to elect not to be covered, violates equal protection principles. *See Patch v. Sebelius*, 320 N.W.2d 511 (N.D.1982) [No violation of equal protection for victims injured by State agency not purchasing insurance and not waiving sovereign immunity and those injured by agency purchasing insurance and waiving sovereign immunity.]

particular problem it need not resolve the entire problem in order that the legislation meet constitutional muster:

> "That more or fewer activities than fall within the exceptions of Sunday closing laws could with equal rationality have been excluded from the general ban does not make irrational the selection actually made."

and

> "A statute is not to be struck down on the supposition that various differently treated situations may in fact be same."

*State v. Gamble Skogmo, Inc.,* 144 N.W.2d 749 (N.D.1966) [Syllabus by the Court].

In *Patch v. Sebelius,* 320 N.W.2d 511 (N.D. 1982), the constitutionality of the legislation (section 32–12.1–15, NDCC) conditioning a tort victim's right to recovery from the State upon the permissive purchase of liability insurance was challenged under Equal Protection and Due Process Clauses of the State and Federal Constitutions. Because it involved the right to *recover* from a *tort-feasor,* we applied the intermediate standard of review. In upholding the legislation, we stated that "[i]t is well established that a legislative enactment is not unconstitutional merely because it is not all-embracing and does not attempt to cure all the evils within its reach." *Patch* at 514.

Thus, I am not convinced that because the legislature has determined to provide "sure and certain relief . . . regardless of questions of fault" for certain workers it must do so for all workers if it has a rational basis for not doing so. Other states have held that social welfare legislation does not violate constitutional principles of equal protection so long as the legislative classification is reasonably related to the purpose of the statute. *E.g., Kunde v. Teesdale Lumber Co.,* 52 Mich.App. 360, 217 N.W.2d 429, appeal after remand 55 Mich.App. 546, 223 N.W.2d 67 (1974) [Legislature has prerogative to redefine extent of worker's compensation benefits].

Logic and common knowledge indicate agricultural employment is hazardous. We attempt to construe legislative enactments in a logical manner, *e.g., Fireman's Fund Mortg.* *Corp. v. Smith,* 436 N.W.2d 246 (N.D.1989), but we have never said that the legislature does or must always act in a logical manner. In the area of social welfare legislation we should intervene only when the actions are unreasonable. Here, as outlined by the majority, there is enough rationality to sustain the legislative enactment. I concur in the majority opinion.

RALPH J. ERICKSTAD, Surrogate Judge, dissenting.

The majority of this court today rejects the majority opinion in *Benson v. North Dakota Workmen's Compensation Bureau,* 283 N.W.2d 96 (N.D.1979), and applies the rational basis test to uphold the agricultural exclusion in the North Dakota Workers Compensation Act against an equal protection challenge. Because I am convinced the *Benson* rationale is even more supportable today than when *Benson* was decided, I respectfully dissent.

### STANDARD OF REVIEW

This court has in the past applied three separate standards of review to equal protection claims: strict scrutiny, the intermediate "close correspondence" standard, and the rational basis test. *Kadrmas v. Dickinson Public Schools,* 402 N.W.2d 897, 902 (N.D. 1987), *aff'd,* 487 U.S. 450, 108 S.Ct. 2481, 101 L.Ed.2d 399 (1988). The standard used in a particular case depends upon the challenged statutory classification and the right allegedly infringed. *Kadrmas, supra,* 402 N.W.2d at 902. The court today abandons the holding in *Benson* that an equal protection challenge to the North Dakota Workers Compensation Act's exclusion for agricultural employees should be governed by the intermediate standard of review. Under the intermediate standard, a statutory classification will be upheld only if it bears a close correspondence to the legislative goals. *E.g., Leadbetter v. Rose,* 467 N.W.2d 431, 436 (N.D.1991); *Kavadas v. Lorenzen,* 448 N.W.2d 219, 221 (N.D.1989); *Mund v. Rambough,* 432 N.W.2d 50, 55 (N.D.1988). This intermediate close correspondence standard applies when a challenged statute infringes upon an "important substantive right." *E.g., B.H. v. K.D.,*

506 N.W.2d 368, 375–376 (N.D.1993); *In re Adoption of K.A.S.*, 499 N.W.2d 558, 564 (N.D.1993); *Leadbetter v. Rose, supra*, 467 N.W.2d at 436; *Mund v. Rambough, supra*, 432 N.W.2d at 55.

The majority holds that the agricultural exclusion, which prohibits an injured farm worker in Haney's position from recovering for injuries sustained in the course of farm employment, falls within the ambit of this court's prior cases applying the rational basis test when a statute regulates "social or economic matters." I do not view the denial of recovery for personal injuries to be merely a "social or economic matter." In my view, a statute denying an agricultural employee the right to recover for personal injuries on the same basis as all other employees within this state clearly affects an important substantive right, triggering application of the close correspondence test. *Cf. Beckler v. North Dakota Workers Compensation Bureau*, 418 N.W.2d 770, 772 (N.D.1988) (continuing right to Workers Compensation disability benefits is a "property" right protected by the Due Process Clause).

As recently as 1989, in *Lee v. Job Service North Dakota*, 440 N.W.2d 518 (N.D.1989), this court noted with approval the determination in *Benson* that workers compensation benefits constitute an important substantive right, mandating application of the close correspondence test. In *Lee, supra*, 440 N.W.2d at 519, we distinguished between unemployment benefits, which are purely economic, and workers compensation benefits, which are for personal injury and for which the injured worker has forfeited the right to sue:

> "Unemployment benefits are a matter of legislative grace. Section 52–01–06, N.D.C.C. ... They may be contrasted to and differentiated from workers compensation benefits, for which injured workers give up the right to sue for damages arising out of a work-related injury in exchange for 'sure and certain relief ... regardless of questions of fault' (§ 65–01–01, N.D.C.C.). Unemployment compensation benefits fall within 'the field of social welfare and economics.' *Idaho Dept. of Employment v. Smith*, 434 U.S. 100, 101,

98 S.Ct. 327, 328, 54 L.Ed.2d 324, 327 (1977). Following the lead of the United States Supreme Court, we have 'consistently deferred to legislative determinations concerning the desirability of statutory classifications affecting the regulation of economic activity and the distribution of economic benefits' (*Idaho Dept. of Employment v. Smith, supra*, 434 U.S. at 101, 98 S.Ct. at 328, 54 L.Ed.2d at 327)."

*Lee* specifically recognized that the right to recover for personal injuries is an important substantive right, and is in accord with our cases applying the close correspondence test when a party's right to recover for personal injuries is statutorily limited. *See, e.g., Bellemare v. Gateway Builders, Inc.*, 420 N.W.2d 733 (N.D.1988); *Hanson v. Williams County*, 389 N.W.2d 319 (N.D.1986).

I agree with the court's rationale in *Lee*, and I adhere to the majority's conclusion in *Benson* that the agricultural exclusion must be examined within the context of the close correspondence test. As a majority of this court noted in *Hanson v. Williams County, supra*, 389 N.W.2d at 325, "[w]e are unwilling to view human life and safety as simply a matter of economics."

Curiously, the majority today argues that *Lee* supports its conclusion that the rational basis test applies, and even goes so far as to chastise Haney's reliance upon *Lee* as "misplaced." Clearly, it is the *majority's* reliance upon *Lee* that is misplaced.

The majority cites *Lee* for the proposition that workers compensation benefits are " 'a matter of legislative grace,' " and that workers compensation benefits " 'fall within "the field of social welfare and economics." ' " I read *Lee* to support the exact opposite conclusion. The *Lee* court, speaking through Justice Levine and concurred in by all other Justices of that court, made those statements about *unemployment* compensation benefits, and carefully explained that those benefits are to "be contrasted to and differentiated from workers compensation benefits." *Lee, supra*, 440 N.W.2d at 519. *Lee* does not fairly support the statements in the majority opinion.

Furthermore, the majority today states that "[t]he important substantive right involved in the workers compensation scheme is the right to sue for damages, which injured workers were required to give up in exchange for sure and certain relief." No citation of authority is given for that statement. The right to sue for damages is not a right granted by the Workers Compensation Act, but exists by virtue of tort law. The important substantive right created by the workers compensation scheme is the right to sure and certain relief, granted in Section 65–01–01, N.D.C.C. The court in *Lee* clearly recognized as much when it first said that "the right to recover for personal injuries" is an important substantive right, then went on to distinguish workers compensation benefits before holding that unemployment benefits did not involve an important substantive right. *Lee, supra,* 440 N.W.2d at 519.

Finally, the majority in the instant case attempts to place significance upon the adoption of comparative negligence to bolster its assertion that *Lee* supports application of the rational basis standard in this case. Comparative negligence was legislatively adopted in 1973, six years before *Benson* was decided. The *Benson* majority did not view the adoption of comparative negligence as weakening the important substantive right of sure and certain relief under the Workers Compensation Act. In spite of the existence of comparative negligence, the *Benson* court concluded that the right to sure and certain legislatively created relief for personal injuries was an important substantive right, warranting application of the close correspondence test. *Benson, supra,* 283 N.W.2d at 99. Nothing in today's majority opinion convinces me that *Benson* was wrong.

### APPLICATION OF CLOSE CORRESPONDENCE TEST

Arguing in support of the statutory classification, the Bureau contends that there is a close correspondence between the agricultural exclusion and the underlying legislative purpose for that exclusion. The Bureau asserts that the Legislature in enacting the agricultural exclusion was concerned with farmers' ability to absorb the costs of workers compensation premiums. *Benson* considered and rejected any suggestion that farmers are somehow affected to a greater degree than other employers by the cost of workers compensation premiums. *See Benson, supra,* 283 N.W.2d at 105–106. The owners of small grocery stores, auto repair shops, and other retail businesses are also adversely affected by the cost of workers compensation premiums, but the Legislature did not see fit to exclude them. Article I, Section 21, of the North Dakota Constitution specifically prohibits the granting of privileges to any class which are not granted upon the same terms to all citizens. Any suggestion that agriculture, by its very nature, is to be specially favored[1] through statutory classifications runs directly contrary to that constitutional prohibition.

Perhaps more important, however, is the Bureau's singular focus upon the affect of the statute on farm employers. Although this writer joined Justice VandeWalle, as did a majority of the Justices, and I think properly so on the basis of the law and the facts in *Bellemare v. Gateway Builders, Inc.,* 420 N.W.2d 733 (N.D.1988), at least three Justices participating in the instant case should be interested in reading what the dissent had to say:

> "The majority opinion has inverted the analytical instruments for examining such a statute, diminishing the importance of human life and safety and enlarging an unarticulated need for financial tranquility among designers and builders. *Hanson* began the inspection with a clearer focal point:
>
>> "'While there are economic consequences ... underlying the legislation in question, we believe our focus must be on the individuals affected. We are unwilling to view human life and safety as simply a matter of economics. Therefore, we agree ... that the right to

1. The agricultural employer who is sued in tort by an employee and against whom a devastating liquidating judgment is rendered might seriously belatedly question the wisdom of such special legislative treatment.

recover for personal injuries is an important substantive right. [citation omitted.] We conclude that the appropriate standard of review to be applied ... is the intermediate standard or the close correspondence test.' *Hanson, supra,* 389 N.W.2d at 325.

"In *Hanson,* we could not discern a close correspondence between the statutory classification created for makers of products and the *stated* legislative goals that would justify unequal treatment of some carelessly injured. Accordingly, we concluded that statute of repose violated Art. I, § 21 of our N.D. Constitution."

*Bellemare, supra,* 420 N.W.2d at 742 (Meschke, J., concurring and dissenting). As noted in *Benson, supra,* 283 N.W.2d at 106, in resolving this type of equal protection challenge "we must focus upon both employer and employee and, although some inequality is permissible, we must balance the benefits against the burdens imposed on each class." In this case we too must balance the denial of a farm worker's right to recover for personal injuries against the financial burdens that workers compensation premiums would place upon farm employers.[2]

Balancing those interests in this case, I am unable to discern any close correspondence between the stated legislative goals and the arbitrary classification excluding farm employees. Article I, Section 21 of our Constitution prohibits granting special privileges to farm employers merely because they are engaged in what has traditionally been a favored vocation in this state. Absent a showing that farm employers will be more disparately affected by the cost of workers compensation premiums than similarly situated non-agricultural employers, there can be no valid justification for a legislative classifica-

tion denying recovery to an entire category of injured workers. The result approved today by the majority will prohibit recovery by a worker injured shoveling grain on a farm, while allowing recovery by a worker injured shoveling gravel on a construction site. I can discern no valid legislative purpose in this record to justify that discrimination.

Professor Larson, perhaps the most quoted authority on workers compensation law, has also seriously questioned the various reasons proffered to support the agricultural exclusion:

"Many reasons, of varying degrees of validity, have been given to explain the agricultural exemption. The only one which seems to have much substance is the practical administrative difficulty that would be encountered by hundreds of thousands of small farmers in handling the necessary records, insurance, and accounting. If this is the reason, it ought to follow that the exemption should be confined to small farmers and not at the same time relieve from compensation responsibility the great fruit, truck, sugarcane, dairy, and wheat farms which have much more in common with industry than with old-fashioned dirt farming. With the exceptions mentioned, based on minimum number of employees or the hazardous or mechanical nature of the employment, this all-important distinction has been largely disregarded in the statutes.

"Less convincing is the argument that the farmer cannot, like the manufacturer, add his compensation cost to the price of his product and pass it on to the consumer. This might be true if an isolated state attempted compulsory coverage, but if all

---

**2.** One of the arguments made against mandatory coverage of farm employees is that the premium costs for voluntary agricultural coverage have been disproportionately high when compared to other industries. However, one cannot determine or estimate the cost of a mandatory inclusion of agricultural employers by what voluntary coverage costs now, because employers voluntarily covered tend to drop out of the system when they have had an employee file a claim, so as to avoid bearing the cost through increased premiums. This problem with voluntary coverage was recognized when attempts were made in the 1970s to repeal the agricultural exclusion. The legislative history indicates that premiums for voluntary agricultural coverage are artificially high because employers elect coverage at discounted premiums, and immediately discontinue coverage when a claim is filed, thereby avoiding the resulting premium increase. *See* Minutes of the Committee on Industry and Business "A," July 17, 1973, at pp. 3–4. Mandatory coverage for agricultural workers would solve this problem, with costs spread among all farm employers, including those with claims histories.

states extended coverage to farm labor, there would be no competitive disadvantage so far as the domestic market is concerned. As to the disparity between the domestic and world market, that problem already exists, and will not become essentially different because of a slight change in one domestic agricultural cost factor.

"Least convincing of all is the assertion that farm laborers do not need this kind of protection. Whatever the compensation acts may say, agriculture is one of the most hazardous of all occupations. In 1964, of 4,761,000 agricultural workers, 3,000 were fatally injured, while of 17,259,-000 manufacturing employees, the number of fatalities was 2,000.

"It is important to ask what valid reason lies behind the exemption in order to have some guide in construing the notoriously troublesome terms 'farm' and 'agriculture.' If, as is here suggested, that reason is one of administrative difficulty, one might expect to find that where the difficulty does not exist, due to the virtual industrialization of the agricultural activity, close questions of definition will be resolved in the direction of compensation coverage."

1C Larson, Workmen's Compensation Law § 53.20 (1993) (Footnote omitted).

The *Benson* majority also considered and rejected the possible legislative purposes for the agricultural exclusion. *Benson, supra,* 283 N.W.2d at 104–107. The changes which have ensued in the years since 1979 have strengthened the force of the *Benson* majority opinion. The face of American agriculture has changed, with small family farms increasingly being replaced by larger, more mechanized, and overall more profitable operations. This well-documented transformation has affected agriculture in North Dakota just as it has across the country. The argument that the administrative burdens of complying with workers compensation laws and regulations would be an undue hardship on farm employers is belied by the true nature of modern agriculture. The average farmer today is already familiar with administrative paperwork and dealing with bureaucracy, through endless government programs and regula-

tions. Haney's employer testified that he had to comply with various state and federal laws and regulations, including withholding state and federal income taxes, withholding FICA taxes, and issuing W–2 forms to Haney and the Internal Revenue Service. Any suggestion that farm employers lack the sophistication or business acumen to comply with the requirements of the workers compensation laws is dispelled by the realities of farming in the 1990s.

A further dramatic change has occurred in the national overview of workers compensation coverage for agricultural workers. The *Benson* majority noted that at that time only seventeen states had mandatory coverage for agricultural workers, and expressed some concern that North Dakota farmers would suffer an economic disadvantage if required to pay workers compensation premiums. *See Benson, supra,* 283 N.W.2d at 105–106. Since that time, there has been an overwhelming trend to include farm workers within mandatory workers compensation coverage, and in the ten years between 1979 and 1989 the number of states providing some degree of coverage for agricultural workers had risen from seventeen to thirty-nine. *See* 4 Larson, Workmen's Compensation Law, App. A, Table 4, p. A–4–1 (1993). By 1992, forty-five states had some form of compulsory coverage for agricultural workers. *Agricultural Workers at Risk,* Workers' Compensation Monthly, Vol. 12, No. 4, at 23 (1992). Thus, the argument that mandatory workers compensation coverage would saddle North Dakota farmers with a competitive disadvantage vis-a-vis farmers in other states is far less persuasive now than when it was rejected by the *Benson* majority in 1979.

In this regard, I note Justice Vogel's cogent opinion in *Johnson v. Hassett,* 217 N.W.2d 771 (N.D.1974), in which this court held that the automobile guest statute was unconstitutional. Justice Vogel painstakingly set out the history of the guest statute, and documented the far-reaching changes in the law and in automobile insurance coverage since passage of the guest statute in 1931. *See Johnson, supra,* 217 N.W.2d at 772–774, 779–780. Noting that "[i]n constitutional law, as in other matters, times change and

doctrines change with the times," [*Johnson, supra*, 217 N.W.2d at 779], the court held that "[c]hanges in circumstances may make irrational a classification which was formerly a rational State purpose." *Johnson, supra*, 217 N.W.2d at 772, Syll. ¶ 5. *See also State v. Quill Corp.*, 470 N.W.2d 203, 213 (N.D. 1991), *rev'd*, —— U.S. ——, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992) (constitutional law is to be applied in a "contemporary context," "[i]n light of ... wholesale changes in the social, economic, commercial, and legal arenas"). Justice Vogel concluded that the significant changes since passage of the guest statute in 1931 had rendered the statutory classification "unreasonable," "not based upon justifiable distinctions," "arbitrary," and "overinclusive." *Johnson, supra*, 217 N.W.2d at 780. Similarly, I believe the sweeping changes in agriculture since 1979 and the increasing national trend toward mandatory workers compensation coverage for farm workers strengthens the conclusion in *Benson* that the agricultural exemption does not bear a close correspondence to the legislative purpose of the Act.

Chief Justice VandeWalle, in his special concurrence, suggests that legislation and the law need not be logical. However, the essence of equal protection is not logic, but *fairness*. It is the agricultural exclusion's discriminatory lack of fairness, rather than the illogical nature of the legislative classification, that violates equal protection. Furthermore, if, as Justice Holmes proffered, "[t]he life of the law has not been logic: it has been experience," [Holmes, The Common Law 1 (1881) ], then our ongoing experience with the agricultural exclusion leads to the conclusion that, although perhaps justifiable at one time, it now violates equal protection. This court has in the past quoted with approval Justice Cardozo's "poetic imagery" on the need for growth and change in the law:

> "The inn that shelters for the night is not the journey's end. The law, like the traveler, must be ready for the morrow. It must have a principle of growth."

Cardozo, The Growth of the Law 20 (1924), *quoted in Lembke v. Unke*, 171 N.W.2d 837, 843 (N.D.1969). *See also Hastings v. James River Aerie No. 2337*, 246 N.W.2d 747, 751 (N.D.1976).

I also find significant the legislative history of the agricultural exclusion. On four separate occasions in the 1970s, the Legislature considered bills that would have repealed the exclusion and included most agricultural employment in the definition of "hazardous employment" under Section 65–01–02, N.D.C.C. *See* 1977 Senate Bill 2547; 1975 Senate Bill 2034; 1973 Senate Bill 2149; 1971 House Bill 1153. In 1973 and 1975, these bills passed handily in the Senate, only to be killed in the House of Representatives. This legislative action suggests an erosion of the policy bases which may at one time have supported the legislative classification.[3]

I find no valid legislative purpose that closely corresponds to the statutory classification embodied in the agricultural exclusion. The exclusion unfairly and unconstitutionally discriminates against agricultural workers, and places severe restrictions upon their right to sure and certain relief that are not placed upon other similarly situated workers in this state. Because I can discern no valid legislative purpose in this record to justify that discrimination, I would hold that the agricultural exclusion violates Article I, Section 21, of the North Dakota Constitution.

*CASES CITED IN MAJORITY OPINION*

The majority opinion cites numerous cases from other jurisdictions to support its conclusion that the agricultural exclusion withstands constitutional scrutiny. I find those cases to be either distinguishable or unpersuasive.

At least two of the cases cited by the majority are wholly inapposite. *Ross v. Ross*, 308 N.W.2d 50 (Iowa 1981), and *Eastway v. Eisenga*, 420 Mich. 410, 362 N.W.2d 684 (1984), involved statutes markedly different from ours. The Iowa and Michigan stat-

3. Perhaps had the Legislature, when unable to agree on how to amend the workers compensation statutes to eliminate the agricultural exclusion, required that all farm employers have liability insurance the devastating consequences over the years to both the farm employer and the farm employee would have been lessened somewhat. Today, nothing less than workers compensation can properly provide equal treatment under our state constitution.

utes at issue in those cases did not include a blanket exemption of agricultural workers. Rather, those statutes provided mandatory coverage for agricultural workers in general, but excluded certain classes of farm workers. In Iowa, certain relatives of the farm employer were excluded. *See Ross, supra,* 308 N.W.2d at 53. In Michigan, the act excluded farm employers who did not employ a minimum number of workers for certain minimum periods of time. *See Eastway, supra,* 362 N.W.2d at 686–687. These cases presented constitutional challenges wholly different from those presented here. I might well agree that a statute that covers agricultural workers generally, but excludes relatives, exchange work, and small operations employing less than three workers, passes constitutional muster. However, the Iowa and Michigan cases do not support the majority's conclusion here.

Another group of cases cited by the majority address the constitutional issue only in dicta, or give it such short shrift that they can hardly be considered persuasive. For example, the entire discussion of this issue in *Cueto v. Stahmann Farms, Inc.,* 94 N.M. 223, 608 P.2d 535, 536 (Ct.App.1980), is as follows:

"Cueto also seems to argue that the exemption denies him equal protection. It does not; the exemption is not arbitrary, but has a reasonable basis."

Similarly, in *Fitzpatrick v. Crestfield Farm, Inc.,* 582 S.W.2d 44, 45 (Ky.Ct.App.1978), the court's entire discussion consists of only two sentences:

"In order to dispose of this appeal in an expeditious manner, we will briefly comment that appellant's third issue presented to us, namely, that the agriculture exclusion contained in the Workmen's Compensation Act is violative of the equal protection clauses of the state and federal constitutions because of discriminatory classification of workers, is without merit. Furthermore, as was the situation in *Peck v. Conder,* Ky., 540 S.W.2d 10 (1976), we will not express an opinion with respect to the possible invalidity of a statute when such an issue was not presented on appeal to the circuit court from the board."

The last sentence suggests that the court did not, in fact, determine the validity of the statute.

A similar result occurred in *State ex rel. Hammond v. Hager,* 160 Mont. 391, 503 P.2d 52 (1972). After a lengthy discussion of the constitutional issue, the court, in a decision signed by three judges, abruptly stated:

"In addition, in Montana we have a long line of cases holding that constitutional questions will not be determined unless their determination is essential to the disposition of the case."

*Hammond, supra,* 503 P.2d at 57. Two judges concurred in the result, stressing that "no constitutional issue is properly before the Court in this proceeding." *Hammond, supra,* 503 P.2d at 57 (Haswell and Daly, JJ., specially concurring).

The three remaining cases cited by the majority do appear to hold that the agricultural exclusions in the workers compensation acts of those states do not violate their respective state or federal equal protection clauses. *See Collins v. Day,* 604 N.E.2d 647 (Ind.Ct.App.1992); *Otto v. Hahn,* 209 Neb. 114, 306 N.W.2d 587 (1981); *Baskin v. State ex rel. Worker's Compensation Division,* 722 P.2d 151 (Wyo.1986). My only response to these cases is that I do not find them to be persuasive, and I respectfully disagree with them.

I find far more persuasive the well-written opinion of the Supreme Court of Colorado in *Higgs v. Western Landscaping & Sprinkler Systems, Inc.,* 804 P.2d 161 (Colo.1991) (en banc). In *Higgs,* the court considered the constitutionality of provisions of Colorado's workers compensation act that treated agricultural workers differently than other workers. Specifically, the statute, although not excluding farm labor from coverage, included the value of room and board within the definition of "wages" for all workers except farm and ranch employees. Applying the more liberal scrutiny of the rational basis test, the court still concluded that the discrimination against farm and ranch workers violated equal protection. *Higgs, supra,* 804 P.2d at 165. The court specifically disagreed with the conclusion of the Colorado Court of Ap-

peals that the disparate treatment of farm and ranch employees was "reasonably related to the 'longstanding governmental interest in assisting the agricultural industry.'" *Higgs, supra*, 804 P.2d at 163–164.

Particularly enlightening is the court's discussion of the discriminatory nature of the classification:

"There undoubtedly are many categories of employees who work under contracts of hire and receive housing and other advantages from the employer, in addition to money wages, in consideration of their labor. Many of these employees perform services similar, although not necessarily identical, to the services performed by farm and ranch employees. The fact that, in contrast to the taxable waitress's tips involved in *Petrafeck* [*v. Industrial Commission*, 191 Colo. 566, 554 P.2d 1097 (1976) ], section 8–47–101(2) utilizes the employee's W–2 form as a proxy for a farm or ranch employee's wages does not serve to render the value of housing and similar advantages received from the employer something other than part of the consideration for which the farm or ranch employee provides services under the contract of hire. The further fact that farm and ranch employees are usually employed on a seasonal basis does not provide a rational basis, in our view, for singling out this category of employees for disparate treatment through the application of a substantially reduced formula for computing their workers' compensation benefits. Where, as here, the statutory scheme requires that the computation of workers' compensation benefits for all employees except farm and ranch employees be based on cash wages as well as housing and similar advantages received from the employer, the statutory exclusion of the reasonable value of housing and similar advantages from the computation of workers' compensation benefits for farm and ranch employees constitutes an artificial distinction lacking a reasonable basis in fact.

"We do not lightly declare a statute unconstitutional. *We are convinced beyond a reasonable doubt*, however, that the disparate treatment accorded to farm and ranch employees with respect to the computation of workers' compensation benefits is based on an arbitrary and illusory distinction that cannot withstand constitutional scrutiny under equal protection analysis."

*Higgs, supra*, 804 P.2d at 165 (Emphasis added; footnote omitted). The court continued:

"One of the salutary goals of equal protection of the laws is to prohibit a state from singling out a discrete group of persons for disparate treatment under the aegis of furthering what ostensibly might be viewed in isolation as a legitimate state interest. To be sure, assisting the agricultural industry is a legitimate governmental interest. The financial interest of the agricultural industry, however, is ancillary at best to the primary goal of the Workers' Compensation Act, which, as previously noted, is to relieve injured workers from the adverse economic effects caused by disabling work-related injuries.... To sanction the disparate treatment accorded farm and ranch employees by section 8–47–101(2) would subject the employees' equal protection rights to unrestricted legislative license and would thereby deprive the equal protection principle of much of its meaningful content. We decline to follow such a course."

*Higgs, supra*, 804 P.2d at 166. I am in full agreement with the rationale expressed by the Colorado Supreme Court, and I believe it supports my conclusion that the agricultural exemption in Section 65–01–02(22)(a), N.D.C.C., violates the equal protection provision in Article I, Section 21 of the North Dakota Constitution.

*PROSPECTIVE APPLICATION*

The Bureau urges that, if the agricultural exemption is declared unconstitutional, the ruling should be applied prospectively only, to give the Bureau and farm employers the opportunity to come into compliance with the new rule of law. This issue was also raised in *Benson, supra*, 283 N.W.2d at 108. The *Benson* majority, relying upon *Kitto v. Minot Park District*, 224 N.W.2d 795 (N.D.1974), applied its holding to the parties in that case

and to claims arising after a specified date following adjournment of the next legislative session:

> "Today's decision would undoubtedly have widespread and unknown ramifications for farmers in this State who have not voluntarily elected to secure coverage under the Act. Similarly, significant adjustments in the Workmen's Compensation Bureau's administration of the Act are required, likely involving additional personnel as well as funding authorization. To permit time for adjustments by all concerned and so that the legislature may study this field of law and possibly amend the Workmen's Compensation Act to meet the criticisms of this opinion, we hold that this decision shall be applicable to the claim of Benson and to future claims arising out of injuries occurring to agricultural employees on and after July 1, 1981."

*Benson, supra,* 283 N.W.2d at 108. In *Kitto,* the court adopted modified prospectivity, applying a new rule of law to the parties in the instant case and to claims arising after some specified future date.[4] This court has on numerous occasions followed the rule on modified prospectivity announced in *Kitto. See, e.g., Soo Line Railroad Co. v. State,* 286 N.W.2d 459, 466 (N.D.1979); *Benson, supra,* 283 N.W.2d at 107–108; *State ex rel. Olson v. Maxwell,* 259 N.W.2d 621, 623 (N.D.1977). *See also Metropolitan Life Insurance Co. v. Commissioner of the Department of Insurance,* 373 N.W.2d 399, 408 (N.D.1985) (recognizing continued validity of the modified prospectivity rule of *Kitto* ).

There is no conflict between application of modified prospectivity by this court and the recent United States Supreme Court decisions on prospectivity. *See Harper v. Virginia Department of Taxation,* 509 U.S. ——, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993); *James B. Beam Distilling Co. v. Georgia,* 501 U.S. 529, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991). In those cases, the Court has abandoned modified prospectivity for new pronouncements of *federal* law. This court has previously recognized, in an opinion authored by

Justice VandeWalle, now Chief Justice, that *James B. Beam* was specifically limited to decisions changing federal law, and did not restrict state courts' prospective application of state law. *Muller v. Custom Distributors, Inc.,* 487 N.W.2d 1, 5 n. 7 (N.D.1992). Justice Souter, announcing the decision of the Court in *James B. Beam,* specifically limited its application to federal law questions. *See James B. Beam, supra,* 501 U.S. at ——, 111 S.Ct. at 2443, 115 L.Ed.2d at 487–488. Those recent pronouncements by the United States Supreme Court do not preclude application of modified prospectivity in this case.

I would hold the agricultural exemption unconstitutional and remand to the Bureau to determine whether or not Haney's injury was compensable. However, for the reasons expressed in *Benson,* and in light of the constitutional changes affecting the date when laws become effective, I would apply that holding to other parties only for causes of action arising on or after January 1st of 1996, following adjournment of the Fifty-fourth Legislative Assembly of the State of North Dakota. *See* Art. IV, § 13, N.D. Const. This would allow the Bureau and farm employers time to meet the requirements of the new rule, and give the Legislature an opportunity to respond to the constitutional mandate, as the Legislature did subsequent to *Kitto v. Minot Park District,* 224 N.W.2d 795 (N.D. 1974).

MESCHKE, J., concurs.

MESCHKE, Justice, dissenting.

I respectfully join in former Chief Justice Erickstad's dissent, and add a reason or two.

The majority recognizes that "agricultural work is hazardous," but rationalizes the exclusion of injured agricultural wage workers from sure and certain relief for a reason unstated by the legislature: To exempt agricultural employers from the expense of the system. That says too much. In my view, that economic justification is a wealth-based classification that discriminates against a po-

---

4. Modified prospectivity is distinguished from pure prospectivity, where the court announces a new rule of law effective for claims arising after the date of decision, but not applicable to pending claims, including the case before it. *See James B. Beam Distilling Co. v. Georgia,* 501 U.S. 529, 535–36, 111 S.Ct. 2439, 2443–2444, 115 L.Ed.2d 481, 488–489 (1991).

litically powerless and unorganized underclass of farm laborers.

This underinclusion improperly grants privileges and immunities upon terms not granted to all hazardously employed citizens in violation of the N.D. Const. art. I, § 21:

> [N]or shall any citizen or class of citizens be granted privileges or immunities which upon the same terms shall not be granted to all citizens.

The times that formed workers' compensation legislation have faded from the judicial memory:

> The law [of industrial accidents] was wildly nonuniform, full of "unpardonable differences and distinctions." This meant that, by 1900, the [fellow-servant] rule had lost some of its reason for being. It was no longer an efficient device for disposing of accident claims. It did not have the courage of its cruelty, nor the strength to be humane. It satisfied neither capital nor labor. It siphoned millions of dollars into the hands of lawyers, court systems, administrators, insurers, claims adjusters. Companies spent and spent, yet did not buy industrial harmony—and not enough of the dollars flowed to the injured workmen. At the turn of the [twentieth] century, rumblings were already heard of the movement that led to a workmen's compensation plan.

Lawrence M. Friedman, *A History of American Law,* p. 484 (2d ed. 1985). Friedman concludes: "For all its failings, workmen's compensation has achieved its basic aims." *Id.* at 683–84. Still, he recognizes a serious failing.

> [W]hite-collar and service workers now outnumber blue-collar workers in the labor force. It is now *their* law, their piece of the welfare state. Since the nation has yet to adopt a general security law, cradle to grave, piecemeal bits accrue to existing institutions or are captured by "special-interest groups." Liability under compensation laws can be looked at in this light.

Friedman at 683. In my view, the exclusion that benefits politically powerful special interests at the expense of sure and certain relief for an economically weak class of wage workers, is a wealth-based classification, and, is therefore unconstitutional.

"All laws of a general nature shall have a uniform operation." N.D. Const. art. I, § 22. Legislative classifications based on wealth, like ones on race, are "suspect" classifications that justify the heightened judicial scrutiny set out in Surrogate Judge Erickstad's dissent. *State v. Carpenter,* 301 N.W.2d 106, 110 (N.D.1980) ("While indigency is not a 'suspect classification' at the present time, we believe that the combination of the classification based upon wealth and the vital interests of [an individual] at stake in a criminal prosecution require an intermediate standard of review."). *See also Harper v. Virginia Board of Elections,* 383 U.S. 663, 668, 86 S.Ct. 1079, 1082, 16 L.Ed.2d 169 (1966) ("Lines drawn on the basis of wealth or property, like those of race ..., are traditionally disfavored."). While the United States Supreme Court has waltzed away from vigorous intervention on behalf of the poor, *see* Laurence H. Tribe, *American Constitutional Law,* § 16–52 ("*Decline But Not Demise of Judicial Intervention on Behalf of the Poor: Minimal Protection of The Laws*"), pp. 1653–1659 (2d ed. 1988), "the state may not actively go about dividing people into different economic classes." *Id.* at 1658. *See Plyler v. Doe,* 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982) (denial of free enrollment to the children of illegal aliens violates equal protection); *Zobel v. Williams,* 457 U.S. 55, 59, 102 S.Ct. 2309, 2312, 72 L.Ed.2d 672 (1982) (policy of distributing dividends from the state's mineral income fund to state residents on the basis of time lived in Alaska violates equal protection by creating "fixed, permanent distinctions between an ever-increasing number of perpetual classes"). A large segment of farm laborers in this state are migrant workers, not residents, and virtually all farm wage workers survive only paycheck to paycheck.

"Underinclusive classifications do not include all who are similarly situated with respect to a rule, and thereby burden less than would be logical to achieve the intended government end." Tribe, *American Constitutional Law,* p. 1447. *See State v. Fischer,* 349 N.W.2d 16, 18 (N.D.1984) ("The declaration of part of a law as unconstitutional does

not require the court to declare the entire law invalid unless all provisions are so connected and dependent upon each other that one can conclude that the Legislature intended the law to take effect in its entirety or not at all."). *See also Smith v. Cahoon,* 283 U.S. 553, 557, 567, 51 S.Ct. 582, 583, 587, 75 L.Ed. 1264 (1931) (invalidating exemption of "company engaged exclusively in the transporting [of] agricultural, horticultural, dairy or other farm products and ... [f]ish" from state regulation of transportation companies "designed to safeguard the public with respect to the use of the highways"); *Williams v. Vermont,* 472 U.S. 14, 105 S.Ct. 2465, 86 L.Ed.2d 11 (1985) (overturning an automobile use tax that gave credit for out-of-state tax payments only to car registrants who were Vermont residents at the time the out-of-state tax was paid). I believe that the North Dakota workers' compensation system is unconstitutionally underinclusive by excluding the wealth-based class of injured agricultural wage workers.

In my opinion, the exclusion is unconstitutional.