Jim L. HIGGS, Petitioner,

v.

**WESTERN LANDSCAPING & SPRIN-KLER SYSTEMS, INC., The Industrial Claim Appeals Office of the State of Colorado, and State Compensation Insurance Authority, Respondents.**

No. 89SC556.

Supreme Court of Colorado,
En Banc.

Jan. 14, 1991.

**162**

Withers, Seidman & Rice, P.C., Gudrun Rice, Grand Junction, for petitioner.

Paul Tochtrop, Denver, for respondent State Compensation Ins. Authority.

Gale A. Norton, Atty. Gen., Timothy M. Tymkovich, Sol. Gen., and Michael J. Steiner, Asst. Atty. Gen., Denver, for respondent Indus. Claim Appeals Office.

Glenn Meyers, Denver, for amicus curiae Colorado Rural Legal Services, Inc.

Justice QUINN delivered the Opinion of the Court.

The question in this case is whether section 8–47–101(2), 3B C.R.S. (1988 Supp.), which was in effect during the proceedings below and which established a different wage basis for computing the workers' compensation benefits for "farm and ranch labor employees," violates equal protection of the laws. In *Higgs v. Western Landscaping & Sprinkler Systems, Inc.*, 789 P.2d 431 (Colo.App.1989), the court of appeals, in a split decision, concluded that the statute passes constitutional scrutiny because the disparate treatment of farm and ranch employees bears a reasonable relationship to the legitimate state interest in providing assistance to the agricultural industry. We hold that the classification created by the statute cannot be squared with the rational-basis standard of review applicable to equal protection claims under the United States and Colorado Constitutions. U.S. Const. amend. XIV; Colo. Const. art. II, § 25. We accordingly reverse the judgment of the court of appeals and remand the case to that court with directions to return the case to the Industrial Claim Appeals Panel for further proceedings.

I.

The facts of this case are not in dispute. On June 25, 1987, James Higgs was injured in a work-related accident arising out of and in the course of his employment as a ranch or farm employee for Western Landscaping & Sprinkler Systems. The State Compensation Insurance Authority admitted liability for temporary total disability benefits at the rate of $138.46 per week based on Higgs' weekly cash wages of $207.69. Higgs filed a claim for workers' compensation benefits, claiming that in ad-

dition to cash wages he received housing with paid utilities and similar advantages from his employer as compensation for his labor.

At the time of Higgs' accident the Workers' Compensation Act provided that "[t]he average weekly wage of an injured employee shall be taken as the basis upon which to compute compensation benefits." § 8–47–101(1), 3B C.R.S. (1986). The term "wages" was defined as "the money rate at which the services rendered are recompensed under the contract of hire in force at the time of the injury, either express or implied." [1] The statutory scheme then in effect provided a different basis for computing the wages and resulting workers' compensation benefits for farm and ranch labor employees and employees of agricultural corporations (hereinafter referred to collectively as farm and ranch employees) than for other employees. Section 8–47–101(2) provided, in this respect, as follows:

> [T]he term "wages" shall include the reasonable value of board, rent, housing, lodging, or any other similar advantages received from the employer, the reasonable value of which shall be fixed and determined from the facts by the division in each particular case. *The term "wages" as applied to farm and ranch labor employees and as applied to employees of agricultural corporations shall be based solely upon the income reported on the employees' W–2 form for federal income tax purposes.*[2] (Emphasis added).

At a hearing on Higgs' claim, an administrative law judge found that Higgs was earning $900.00 per month in cash wages at the time of his injury and that the in-come reported on his W–2 form for federal income taxes was based on cash wages in that monthly amount. The administrative law judge also found that Higgs' employer had provided Higgs with a three-bedroom house, including paid utilities, and similar advantages in the form of "fruits, vegetables, poultry, eggs and a calf," the reasonable value of which was $600.00 per month. Because, however, Higgs' W–2 form did not include the reasonable value of these additional benefits, the administrative law judge concluded that section 8–47–101(2) prohibited giving any consideration to these benefits in calculating Higgs' wages for purposes of computing his workers' compensation benefits. Higgs was accordingly awarded temporary disability benefits at the rate of $138.46 per week, based on his weekly wage of $207.69 per week or $900.00 per month.

Higgs appealed to the Industrial Claim Appeals Panel on the basis that the different statutory standard for computing workers' compensation benefits for farm and ranch employees violated equal protection of the laws under the federal and state constitutions. Acknowledging that it was without authority to rule on the constitutionality of this statute, *see Kinterknecht v. Indus. Comm'n*, 175 Colo. 60, 485 P.2d 721 (1971), the panel affirmed the decision of the administrative law judge. Higgs then appealed to the court of appeals, which affirmed the decision of the panel. The court reasoned that section 8–47–101(2) did not violate equal protection of the laws because the difference in wage computation applicable to farm and ranch employees was reasonably related to the "long-standing governmental interest in assisting

---

**1.** Section 8–47–101(2), 3B C.R.S. (1988 Supp.), stated that the term "wages" did not include gratuities received from employers or others and also did not include amounts deducted by the employer under the contract of hire for materials, supplies, tools, and other things furnished and paid for by the employer and necessary for the performance of the contract by the employee. These provisions, however, play no part in the resolution of this case.

**2.** Section 8–47–101(2) was enacted in 1987, ch. 52, sec. 1, § 8–47–101(2), 1987 Colo.Sess. Laws 395, and became effective on May 19, 1987. The Workers' Compensation Act was repealed and reenacted in 1990 with an effective date of July 1, 1990. *See* Ch. 62, sec. 1–79 at 468–576, 1990 Colo.Sess. Laws. The calculation of wages applicable to farm and ranch labor employees is now governed by section 8–40–201(19), 3B C.R.S. (1990 Supp.). All of the statutory references in our opinion refer to the version of the Workers' Compensation Act that was in effect at the time of Higgs' injury.

the agricultural industry." *Higgs,* 789 P.2d at 433. We granted Higgs' petition for certiorari to review the decision of the court of appeals.

## II.

The Fourteenth Amendment to the United States Constitution states that "[n]o state shall ... deny to any person within its jurisdiction the equal protection of the laws." The right to equal protection finds support in the Due Process Clause of article II, section 25 of the Colorado Constitution. *See, e.g., Bd. of County Comm'rs v. Flickinger,* 687 P.2d 975, 982 (Colo.1984); *Heninger v. Charnes,* 200 Colo. 194, 197 n. 3, 613 P.2d 884, 886 n. 3 (1980). In its concern for equality of treatment, equal protection of the laws requires the government to treat similarly situated persons in a similar manner. *Tassian v. People,* 731 P.2d 672, 674 (Colo.1987).

When a statute is subjected to an equal protection challenge, the level of judicial scrutiny varies with the type of classification utilized and the nature of the right affected. *Id.* In the absence of a suspect class (such as a classification based on race or national origin), an abridgement of a fundamental right (such as freedom of speech or freedom of religion), or a special classification triggering an intermediate standard of review (such as classifications based on gender or illegitimacy), an equal protection challenge must be analyzed under the rational-basis standard of review. *E.g., San Antonio Indep. School Dist. v. Rodriguez,* 411 U.S. 1, 40–44, 93 S.Ct. 1278, 1300–03, 36 L.Ed.2d 16 (1973); *Lujan v. Colorado State Bd. of Educ.,* 649 P.2d 1005, 1015–16 (Colo.1982). Under the rational-basis standard of review, a statutory classification that singles out a group of persons for disparate treatment must be rationally based on differences that are real and not illusory and must be reasonably related to a legitimate state interest. *San Antonio Indep. School Dist.,* 411 U.S. at 44, 93 S.Ct. at 1302–03; *Lindsey v. Normet,* 405 U.S. 56, 70, 92 S.Ct. 862, 872–73, 31 L.Ed.2d 36 (1972); *Branson v. City of Denver,* 707 P.2d 338, 340 (Colo.1985);

*Hurricane v. Kanover, Ltd.,* 651 P.2d 1218, 1222 (Colo.1982). There is a presumption of constitutionality attaching to a classification analyzed under the rational-basis standard of review, and the burden is on the party challenging the classification to establish its invalidity beyond a reasonable doubt. *Gallegos v. Phipps,* 779 P.2d 856, 860 (Colo.1989); *Tassian,* 731 P.2d at 675; *Branson,* 707 P.2d at 340. The rational-basis standard of review is the standard that we must apply in resolving this case.

## III.

By its plain terms, section 8–47–101(2) expressly requires that, except for farm and ranch labor employees, the term "wages" be construed to include the reasonable value of housing and other similar advantages received from an employer. In the case of farm and ranch employees, the statute expressly limits the measure of wages to the income reported on the employee's W–2 federal income tax form. Our initial inquiry, therefore, is whether there are sufficient differences between farm and ranch employees and all other employees to justify the obvious difference in treatment accorded to farm and ranch employees in construing the term "wages" for purposes of computing workers' compensation benefits.

In *Petrafeck v. Indus. Comm'n,* 191 Colo. 566, 554 P.2d 1097 (1976), we recognized that the touchstone of the Workers' Compensation Act is the "contract of hire, either express or implied," and that a court should avoid "hypertechnical refinements" in effectuating the act's beneficial purpose of "allay[ing] the adverse economic effects upon a workman which flow from a *disabling* accident." 191 Colo. at 569, 554 P.2d at 1099 (quoting *City of Boulder v. Payne,* 162 Colo. 345, 350, 426 P.2d 194, 197 (1967) (emphasis in original)). In *Petrafeck,* we rejected an earlier contrary decision of this court in *Indus. Comm'n v. Lindvay,* 94 Colo. 531, 31 P.2d 495 (1934), and held that the exclusion of tips in calculating a waitress's average weekly wages for the purpose of establishing the waitress's compen-

sation benefits violated equal protection of the laws. We reasoned in *Petrafeck* that, from the standpoint of both the employer and the employee, "tips are an integral part of the contract of hire and comprise a substantial portion of the employee's average weekly wage" and that the exclusion of such tips "from an employee's average weekly wage requires that a penalty be imposed on all employees that depend, to some extent, on tips for their income." 191 Colo. at 569, 554 P.2d at 1099. Such differential treatment, we concluded, could not be reconciled with equal protection of the laws.

There undoubtedly are many categories of employees who work under contracts of hire and receive housing and other advantages from the employer, in addition to money wages, in consideration of their labor. Many of these employees perform services similar, although not necessarily identical, to the services performed by farm and ranch employees. The fact that, in contrast to the taxable waitress's tips involved in *Petrafeck*, section 8–47–101(2) utilizes the employee's W–2 form as a proxy for a farm or ranch employee's wages does not serve to render the value of housing and similar advantages received from the employer something other than part of the consideration for which the farm or ranch employee provides services under the contract of hire.[3] The further fact that farm and ranch employees are usually employed on a seasonal basis does not provide a rational basis, in our view, for singling out this category of employees for disparate treatment through the application of a substantially reduced formula for computing their workers' compensation benefits. Where, as here, the statutory scheme requires that the computation of workers' compensation benefits for all employees except farm and ranch employees be based on cash wages as well as housing and similar advantages received from the employer, the statutory exclusion of the reasonable value of housing and similar advantages from the computation of workers' compensation benefits for farm and ranch employees constitutes an artificial distinction lacking a reasonable basis in fact.

We do not lightly declare a statute unconstitutional. We are convinced beyond a reasonable doubt, however, that the disparate treatment accorded to farm and ranch employees with respect to the computation of workers' compensation benefits is based on an arbitrary and illusory distinction that cannot withstand constitutional scrutiny under equal protection analysis.

## IV.

Although we could end our analysis here, we elect to address the second prong of the rational-basis standard of review—that is, whether the statutory classification bears a reasonable relationship to a legitimate governmental interest. We are satisfied that section 8–47–101(2) also fails to pass constitutional muster on that count.

We are not unmindful of this court's decision in *Anaya v. Indus. Comm'n*, 182 Colo. 244, 512 P.2d 625 (1973), which rejected an equal protection challenge to a former version of the workers' compensation act that totally exempted "employers of ... farm and ranch labor" from the requirement of providing workers' compensa-

---

**3.** For federal income tax purposes, 26 U.S.C. § 119(a) (1989) provides that the value of any meals or lodging furnished by an employer to the employee are excluded from gross income if furnished for the convenience of the employer, but only if, in the case of meals, the meals are furnished on the business premises of the employer, or, in the case of lodging, the employee is required to accept lodging on the business premises of the employer as a condition of his employment. *See generally* 26 C.F.R. § 1.119–1 (1990). The Internal Revenue Code further states that in determining whether meals or lodging are furnished for the convenience of the employer, "the provisions of an employment contract or of a State statute fixing terms of employment shall not be determinative of whether the meals or lodging are intended as compensation." Thus, neither the employer's decision to exclude the value of these items from income in preparing the employee's W–2 form nor the employee's decision to include or exclude such items as income in preparing an income tax return is controlling on the issue before us, which is whether the statutory classification in section 8–47–101(2), 3B C.R.S. (1988 Supp.), violates equal protection of the laws under the federal and state constitutions.

tion insurance coverage for their employees. Although a legislative decision to exclude a category of employees from a workers' compensation scheme might withstand constitutional scrutiny under equal protection analysis—a question we need not and do not decide here—we deal in this case not with exclusion but rather with the disparate treatment of a discrete category of employees expressly included within the workers' compensation statutory scheme. We are also cognizant of the fact that the question of extent and degree of coverage for employees is generally a matter for legislative determination. *See Billings Ditch Co. v. Indus. Comm'n,* 127 Colo. 69, 77, 253 P.2d 1058, 1061 (1953). Such legislative determination, however, is subject to the overriding constitutional duty of the state to accord evenhanded treatment to persons affected by the exclusionary effect of a statutory classification.

One of the salutary goals of equal protection of the laws is to prohibit a state from singling out a discrete group of persons for disparate treatment under the aegis of furthering what ostensibly might be viewed in isolation as a legitimate state interest. To be sure, assisting the agricultural industry is a legitimate governmental interest. The financial interest of the agricultural industry, however, is ancillary at best to the primary goal of the Workers' Compensation Act, which, as previously noted, is to relieve injured workers from the adverse economic effects caused by disabling work-related injuries. *E.g., Allee v. Contractors, Inc.,* 783 P.2d 273, 276 (Colo.1989); *Grover v. Indus. Comm'n,* 759 P.2d 705, 709 (Colo.1988); *City of Boulder v. Payne,* 162 Colo. at 350, 426 P.2d at 197; *Vanadium Corp. of America v. Sargent,* 134 Colo. 555, 562, 307 P.2d 454, 459 (1957). To sanction the disparate treatment accorded farm and ranch employees by section 8–47–101(2) would subject the employees' equal protection rights to unrestricted legislative license and would thereby deprive the equal protection principle of much of its meaningful content. We decline to follow such a course.

We accordingly reverse the judgment of the court of appeals and remand the case to that court with directions to return the case to the Industrial Claim Appeals Panel for further proceedings consistent with the views herein expressed.

MULLARKEY, J., does not participate.