Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
April 17, 2017

**2017 CO 24**

**No. 15SA291, <u>People v. Hyde</u>—Searches and Seizures—Warrantless Blood Draw—
Consent to Search.**

In this interlocutory appeal, the supreme court considers whether a warrantless

blood draw conducted on an unconscious driver pursuant to Colorado's Expressed

Consent Statute ("the Statute"), section 42-4-1301.1, C.R.S. (2016), violated the Fourth

Amendment's prohibition on unreasonable searches.  The supreme court explains that

by driving in Colorado, the driver consented to the terms of the Statute, including its

requirement that "[a]ny person who is dead or unconscious shall be tested to determine

the alcohol or drug content of the person's blood."  § 42-4-1301.1(8).  The supreme court

concludes that the driver's prior statutory consent satisfied the consent exception to the

warrant requirement under the Fourth Amendment; therefore, the blood draw

conducted in this case was constitutional.  Consequently, the supreme court reverses

the trial court's order suppressing the blood-draw evidence.

## The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

---

**2017 CO 24**

---

**Supreme Court Case No. 15SA291**

*Interlocutory Appeal from the District Court*

Arapahoe County District Court Case No. 15CR1230

Honorable Frederick T. Martinez, Judge

---

**Plaintiff–Appellant:**

The People of the State of Colorado,

v.

**Defendant–Appellee:**

Oliver Benton Hyde.

---

**Order Reversed**

*en banc*

April 17, 2017

---

**Attorneys for Plaintiff–Appellant:**

George H. Brauchler, District Attorney, Eighteenth Judicial District

Jennifer Gilbert, Deputy District Attorney

  *Centennial, Colorado*

**Attorneys for Defendant–Appellee:**

Graf & Associates, P.C.

Gregory C. Graf

  *Greenwood Village, Colorado*

**JUSTICE HOOD** delivered the Opinion of the Court.

**JUSTICE EID** concurs in the judgment, and **CHIEF JUSTICE RICE** and **JUSTICE COATS** join in the concurrence in the judgment.

¶1    The defendant, Oliver Hyde, was involved in a single-vehicle accident that left him unconscious. The police suspected that he might have been driving under the influence of alcohol. Hyde was transported to the hospital, and, in accordance with Colorado law, a sample of his blood was taken to establish his blood-alcohol concentration ("BAC").

¶2    Hyde was charged with driving under the influence of alcohol ("DUI"). He sought to have the result of the blood test suppressed as evidence obtained through an illegal search in violation of the Fourth Amendment to the United States Constitution. The trial court granted his motion to suppress, and the People filed this interlocutory appeal.

¶3    In this opinion, we consider whether this warrantless blood draw violated the Fourth Amendment's prohibition on unreasonable searches. By driving in Colorado, Hyde consented to the terms of the Expressed Consent Statute, including its requirement that he submit to blood-alcohol testing under the circumstances present here. Hyde's statutory consent satisfied the consent exception to the Fourth Amendment warrant requirement. We therefore conclude that in the circumstances presented here, the blood draw was constitutional. Accordingly, we reverse the trial court's suppression order.

## I. Facts and Procedural History

¶4    On February 10, 2015, just after midnight, Aurora Police Department ("APD") officers responded to an accident at Iliff Avenue and I-225, where the defendant had driven his pickup truck into a light pole, despite seemingly safe driving conditions.

One of the first officers to arrive on the scene found Hyde unconscious, pinned in the driver's seat, with blood gurgling from his mouth. She got within a few inches of Hyde to determine whether he was breathing and smelled alcohol. Passengers in the truck explained that they had attended a basketball game earlier that evening; one passenger stated that Hyde had consumed three beers. After fire personnel extracted Hyde from the truck, an ambulance crew took him to a nearby hospital. En route, Hyde regained consciousness and became combative. Therefore, the ambulance crew sedated him.

¶5 APD requested that hospital staff perform a blood draw, which revealed that slightly less than two hours after the accident, Hyde's BAC was 0.06. That BAC level permits an inference that Hyde drove while impaired by the consumption of alcohol. See § 42-4-1301(6)(a)(II), C.R.S. (2016). Because Hyde was unconscious, APD did not ask for his consent before ordering the blood draw. APD also did not seek a search warrant.

¶6 The People charged Hyde with DUI. Hyde sought to suppress the blood-draw evidence, arguing that the police lacked probable cause to request a blood-alcohol test and that, by conducting a warrantless draw without his contemporaneous consent, the police violated his Fourth Amendment right to be free from unreasonable searches.

¶7 The trial court found there was probable cause to believe Hyde was driving under the influence, but it agreed with Hyde that the warrantless blood draw, administered while he was unconscious and had no opportunity to refuse, violated the Fourth Amendment. Relying primarily on Missouri v. McNeely, 133 S. Ct. 1552 (2013), and the plurality opinion in People v. Schaufele, 2014 CO 43, 325 P.3d 1060, the trial

3

court reasoned that while Colorado's Expressed Consent Statute, section 42-4-1301.1, C.R.S. (2016), deems drivers to have consented to a blood or breath test, this statutory consent did not satisfy the consent exception to the warrant requirement because it did not afford the unconscious driver the chance to return to consciousness and revoke his consent. The trial court therefore granted Hyde's motion to suppress the blood-draw result.

¶8 The People filed this interlocutory appeal under section 16-12-102(2), C.R.S. (2016), and C.A.R. 4.1. They ask this court to determine whether the trial court erred in concluding that the warrantless blood draw violated the Fourth Amendment.

## II. Standard of Review

¶9 Review of a trial court's suppression order presents a mixed question of fact and law. People v. Munoz-Gutierrez, 2015 CO 9, ¶ 14, 342 P.3d 439, 443. We defer to the trial court's findings of fact that are supported by the record, but we assess the legal effect of those facts de novo. Id.; see also People v. Chavez-Barragan, 2016 CO 66, ¶¶ 33–35, 379 P.3d 330, 338 (examining the standards of review this court has historically applied to questions of voluntariness); People v. Matheny, 46 P.3d 453, 459 (Colo. 2002) ("[W]hen a constitutional right is implicated . . . appellate courts should not defer to a lower court's judgment when applying legal standards to the facts found by the trial court.").

## III. Analysis

¶10 We begin with an overview of the relevant provisions of Colorado's Expressed Consent Statute and the Fourth Amendment to the United States Constitution. We then

4

consider whether the blood draw conducted in this case was permissible under the Fourth Amendment. By driving in Colorado, Hyde consented to the terms of the Expressed Consent Statute, including its requirement that he submit to blood-alcohol testing under the circumstances present here. Hyde's statutory consent satisfied the consent exception to the Fourth Amendment warrant requirement. We therefore conclude that in the circumstances presented here, the blood draw was constitutional. Accordingly, we reverse the trial court's suppression order.

## A. The Legal Backdrop

¶11 With the rise of motor vehicle usage in the twentieth century, states found themselves confronting a grave problem: the devastating consequences of drunk drivers on the nation's roadways. Birchfield v. North Dakota, 136 S. Ct. 2160, 2167 (2016). In response, states enacted laws making it illegal to drive while intoxicated. Id. But a prohibition on drunk driving was not enough to conquer the problem. In order to obtain evidence necessary for securing convictions under the new laws, states began to enact implied consent laws designed to encourage drivers to submit to blood-alcohol tests. See Comment, The Theory and Practice of Implied Consent in Colorado, 47 U. Colo. L. Rev. 723, 724 (1976); Colo. Legis. Council, Research Pub. No. 123, Highway Safety in Colorado 43 (1966) ("Advocates of implied consent argue that a much greater conviction rate could be obtained against persons charged with driving while under the influence than at present through adoption of implied consent legislation."). These laws "require motorists, as a condition of operating a motor vehicle within the State, to consent to BAC testing if they are arrested or otherwise

5

detained on suspicion of a drunk-driving offense." McNeely, 133 S. Ct. at 1566 (plurality opinion).

¶12 Colorado first enacted an implied consent statute in 1967. Ch. 356, sec. 2, § 13-5-30(3), 1967 Colo. Sess. Laws 753, 753–55. The current version of the law is the Expressed Consent Statute ("the Statute"),[1] codified at section 42-4-1301.1. The Statute provides that any person who drives in the state is required to submit to a test to determine the alcoholic content of the person's blood or breath when requested to do so by a law enforcement officer who has probable cause to believe the person was driving under the influence of alcohol. § 42-4-1301.1(2)(a)(I). The Statute also states that "[a]ny person who drives any motor vehicle . . . throughout [the] state shall be deemed to have expressed such person's consent to the provisions of this section." § 42-4-1301.1(1).

¶13 A conscious driver who refuses to submit to a test is subject to certain administrative and evidentiary consequences spelled out in the statutory scheme. See § 42-2-126(3)(c)(I), C.R.S. (2016) (refusal leads to revocation of driver's license); § 42-4-1301(6)(d), C.R.S. (2016) (refusal admissible at trial to prove guilt of DUI).

¶14 An unconscious driver, on the other hand, "shall be tested to determine the alcohol or drug content of the person's blood." § 42-4-1301.1(8). In other words, under the Expressed Consent Statute, the police need not wait until a drunk-driving suspect returns to consciousness, in order to afford that suspect an opportunity to refuse.

---

[1] Though Colorado's statute is phrased in terms of "expressed consent," its language and effect are similar to "implied consent" laws in other states. Compare § 42-4-1301.1 (Colorado's Expressed Consent Statute), with Mo. Rev. Stat. § 577.020 (2016) (Missouri's implied consent law), and Conn. Gen. Stat. § 14-227b (2016) (Connecticut's implied consent law).

¶15 A blood draw conducted pursuant to the Statute must comport with the Fourth Amendment to the United States Constitution, which prohibits unreasonable searches and seizures. U.S. Const. amend. IV; see also Colo. Const. art. II, § 7; Eddie's Leaf Spring Shop & Towing LLC v. Colo. Pub. Utils. Comm'n, 218 P.3d 326, 333 (Colo. 2009) ("The Colorado and U.S. Constitutions are generally coextensive with regard to warrantless searches and seizures."); McNeely, 133 S. Ct. at 1558 (majority opinion) (explaining that a blood draw is a search).

¶16 Before the government may conduct a search, the Fourth Amendment generally requires a warrant. See Kentucky v. King, 563 U.S. 452, 459 (2011). Still, "the ultimate measure of the constitutionality of a governmental search is 'reasonableness.'" Vernonia Sch. Dist. 47J v. Acton, 515 U.S. 646, 652 (1995). A warrantless search is reasonable if it falls within one of certain recognized exceptions to the warrant requirement. King, 563 U.S. at 459; see also People v. Rodriguez, 945 P.2d 1351, 1359 (Colo. 1997) ("Generally, warrantless searches and seizures are per se unreasonable unless they satisfy one of the specifically established and clearly articulated exceptions to the warrant requirement.").

¶17 From time to time, the United States Supreme Court has been presented with cases questioning whether warrantless blood tests are nevertheless reasonable under the Fourth Amendment. In Schmerber v. California, 384 U.S. 757, 758–59 (1966), law enforcement arrested the petitioner for DUI and ordered a blood test conducted despite the petitioner's refusal to consent. The petitioner claimed the blood-test result was the product of an unconstitutional search and sought to have it excluded from evidence. Id.

7

at 766–67.  The Court explained that "the Fourth Amendment's proper function is to constrain, not against all intrusions . . . , but against intrusions which are not justified in the circumstances, or which are made in an improper manner."  Id. at 768.  In the specific circumstances presented in the petitioner's case, the Court concluded that the need to procure BAC evidence before it was naturally eliminated from the petitioner's blood justified the warrantless test.  Id. at 770–71 ("Particularly in a case such as this, where time had to be taken to bring the accused to a hospital and to investigate the scene of the accident, there was no time to seek out a magistrate and secure a warrant.").

¶18     More recently, in McNeely, the Supreme Court clarified that the body's natural metabolization of alcohol does not create an exigency in all circumstances.  133 S. Ct. at 1563 ("[W]hile the natural dissipation of alcohol in the blood may support a finding of exigency in a specific case, as it did in Schmerber, it does not do so categorically.").  However, while the Court rejected a per se exigency justification for warrantless blood tests, the plurality spoke approvingly of implied consent laws such as Colorado's as alternate means for states to enforce their drunk-driving laws and secure BAC evidence.  Id. at 1566 (plurality opinion).

¶19     The Supreme Court's latest examination of warrantless blood tests in the drunk-driving context occurred last term, when the Court decided Birchfield v. North Dakota, 136 S. Ct. 2160.  In that case, a trio of petitioners challenged state laws imposing criminal—rather than merely administrative or evidentiary—penalties on lawfully arrested drivers who refuse to submit to blood or breath testing.  See id. at 2185.  On its

8

way to reaching a determination on the validity of those laws, the Court considered whether the search-incident-to-arrest exception to the Fourth Amendment warrant requirement can justify warrantless chemical testing. The Court concluded that a warrantless breath test is constitutionally permissible as a search incident to a lawful arrest for drunk driving, but a blood test, which it found more intrusive, is not. Id. at 2184–85.

¶20    Although the Birchfield Court ruled out justifying warrantless blood tests on the basis of the search-incident-to-arrest exception, it expressed approval for justifying them on the basis of still another exception: consent. The consent exception to the warrant requirement may justify a warrantless search if it is "the product of an essentially free and unconstrained choice by its maker." People v. Licea, 918 P.2d 1109, 1112 (Colo. 1996) (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 225 (1973)). Consent is involuntary if it is "the result of duress or coercion, express or implied, or any other form of undue influence exercised [by the police] against the defendant." Munoz-Gutierrez, ¶ 17, 342 P.3d at 444 (alteration in original) (quoting People v. Magallanes-Aragon, 948 P.2d 528, 531 (Colo. 1997)).

¶21    In Birchfield, the Court endorsed the use of implied consent laws like Colorado's Expressed Consent Statute to secure BAC evidence in compliance with the Fourth Amendment. The Court explained: "It is well established that a search is reasonable when the subject consents, and that sometimes consent to a search need not be express but may be fairly inferred from context." 136 S. Ct. at 2185 (citation omitted). The Court went on to affirm the constitutionality of implied consent laws that impose civil

9

penalties and evidentiary consequences on drivers who refuse to comply with blood-alcohol testing, id., as the Expressed Consent Statute does.

¶22 With this legal backdrop in mind, we now consider whether the warrantless blood draw conducted while Hyde was unconscious violated the Fourth Amendment.

### B. The Blood Draw Was Constitutional

¶23 By choosing to drive in the state of Colorado, Hyde gave his statutory consent to chemical testing in the event that law enforcement officers found him unconscious and had probable cause to believe he was guilty of DUI.[2] § 42-4-1301.1(1) ("Any person who drives any motor vehicle . . . throughout this state shall be deemed to have expressed such person's consent to the provisions of [the Expressed Consent Statute].").

¶24 Hyde's statutory consent also satisfied the consent exception to the Fourth Amendment warrant requirement.[3] This conclusion flows from recent Supreme Court

---

[2] We recognize that section 42-4-1301.1(8) does not explicitly mention probable cause. But it mandates that "[a]ny person who is dead or unconscious shall be tested to determine the alcohol or drug content of the person's blood . . . as provided in this section." § 42-4-1301.1(8) (emphasis added). We read "as provided in this section" to incorporate the probable cause requirement contained in section 42-4-1301.1(5), which states: "The tests shall be administered at the direction of a law enforcement officer having probable cause to believe that the person had been driving a motor vehicle in violation of [the prohibitions on DUI] . . . ." The People do not dispute the existence of this probable cause requirement. Hyde does not now challenge the trial court's factual determination that there was probable cause to believe that he was driving under the influence.

[3] While we reach this conclusion in the unconscious-driver situation presented here, we do not intend to suggest that a law enforcement officer may forcibly conduct a blood draw on any driver who has revoked his or her statutory consent by refusing to submit to a blood-alcohol test—in fact, the Expressed Consent Statute forbids forced draws, except when there is probable cause to believe the driver has committed one of a limited number of enumerated crimes. § 42-4-1301.1(3) ("No law enforcement officer shall physically restrain any person for the purpose of obtaining a specimen of such

10

precedent. As discussed above, in McNeely, 133 S. Ct. at 1563 (majority opinion), the Supreme Court held that there is no categorical, per se exigency exception to the warrant requirement based on the natural dissipation of alcohol in the bloodstream. While Hyde suggests that this means that all warrantless, non-exigent, forced blood draws are unconstitutional, McNeely was not so broad. McNeely concerned the exigent-circumstances exception exclusively. And the McNeely plurality underscored the utility of implied consent laws such as Colorado's Expressed Consent Statute. See id. at 1566 (plurality opinion).

¶25 The Supreme Court reaffirmed its approval of implied consent laws in Birchfield. The respondents in that case argued that warrantless blood draws "are justified based on the driver's legally implied consent to submit to them." Birchfield, 136 S. Ct. at 2185. In response, the Court explained: "Our prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply. Petitioners do not question the constitutionality of those laws, and nothing we say here should be read to cast doubt on them." Id. (emphasis added) (citations omitted).

¶26 True, the Court's approval extended only to implied consent laws that impose civil penalties if a driver refuses to take a blood test; the Court considered laws that impose criminal penalties on a driver's refusal to be going a step too far. See id. But

person's blood, breath, saliva, or urine for testing except when the officer has probable cause to believe that the person has committed criminally negligent homicide . . . , vehicular homicide . . . , assault in the third degree . . . , or vehicular assault . . . , and the person is refusing to take or to complete [a test] . . . .").

11

Colorado's Expressed Consent Statute falls into the former category—the Statute imposes only civil, and not criminal, penalties on drivers who refuse to submit to a blood test. Birchfield therefore sanctions the warrantless blood draw that was conducted here on the basis of statutory consent.[4]

¶27 So, any hope for Hyde's claim that the blood draw was unconstitutional relies on the premise that drivers have a right to refuse a chemical test. But that premise is faulty: there is no constitutional right to refuse a blood-alcohol test. South Dakota v. Neville, 459 U.S. 553, 560 n.10 (1983) ("[A] person suspected of drunk driving has no constitutional right to refuse to take a blood-alcohol test."); Cox v. People, 735 P.2d 153, 155 n.3 (Colo. 1987) ("[T]here is no constitutional right to refuse to submit to a chemical test for blood alcohol content."); Brewer v. Motor Vehicle Div., 720 P.2d 564, 568 (Colo. 1986) (same). To the contrary, any opportunity to refuse chemical testing is "simply a matter of grace bestowed by the [state] legislature." Neville, 459 U.S. at 565.

¶28 The plain language of the Expressed Consent Statute indicates that the Colorado legislature did not intend to bestow that grace upon unconscious drivers. Section 42-4-1301.1(8) provides that an unconscious driver "shall be tested to determine [blood-alcohol content]." (Emphasis added.) The legislature's use of the word "shall" in a

---

[4] In Birchfield, the Court briefly touched on the problem of securing BAC evidence from unconscious drivers, noting that "the police may apply for a warrant if need be." Id. at 2184–85. But this statement was made in the context of the Court's discussion of whether blood draws may be justified under the search-incident-to-arrest exception to the warrant requirement. The Court concluded that they may not. Id. at 2185. The Court approved of the use of implied consent laws to secure BAC evidence, id., and the Birchfield opinion does not call into question the constitutionality of section 42-4-1301.1(8).

statute generally indicates its intent for the term to be mandatory. See, e.g., Pearson v. Dist. Court, 924 P.2d 512, 516 (Colo. 1996); People v. Dist. Court, 713 P.2d 918, 921 (Colo. 1986). Thus, Hyde had neither a constitutional nor a statutory right to refuse the blood draw.

¶29 Hyde relies on Schaufele, which, like this case, involved an unconscious driver and a warrantless blood draw suppressed by the trial court. But in Schaufele, the People sought—and were denied—a rule that would justify the warrantless blood draw based on the exigent-circumstances exception to the warrant requirement. See Schaufele, ¶¶ 2–3, 325 P.3d at 1062 (plurality opinion). Here, the People expressly waived exigent circumstances as a justification for the blood draw. Because exigent circumstances are not at issue, Schaufele is inapposite.[5]

¶30 Finally, we respond to Hyde's argument that allowing a blood test on an unconscious driver violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, U.S. Const. amend. XIV, by treating an unconscious driver differently from a conscious driver, who is given the opportunity to refuse a test. Because section 42-4-1301.1(8) does not involve a suspect class or abridge a fundamental right, we analyze Hyde's challenge under the rational basis standard of review. See Higgs v. W. Landscaping & Sprinkler Sys., Inc., 804 P.2d 161, 164 (Colo. 1991). Under this standard, "a statutory classification will stand if it bears a rational relationship to

---

[5] Furthermore, we do not see any conflict with the plurality's statement in Schaufele that "Colorado's express consent statute does not abrogate constitutional requirements." Id. at ¶ 28, 325 P.3d at 1066. Our holding today makes clear that Colorado's Expressed Consent Statute complies with constitutional requirements by satisfying the consent exception to the warrant requirement.

legitimate governmental objectives and is not unreasonable, arbitrary, or capricious." HealthONE v. Rodriguez ex rel. Rodriguez, 50 P.3d 879, 893 (Colo. 2002). A classification analyzed under the rational basis standard is presumed to be constitutional, and the party challenging the classification bears the burden of proving its unconstitutionality beyond a reasonable doubt. Id.

¶31 Hyde has not met that burden. When drivers are unconscious, law enforcement officers are deprived of the evidence they typically rely on in drunk-driving prosecutions: unlike conscious drivers, unconscious drivers cannot perform roadside maneuvers, display speech or conduct indicative of alcohol impairment, or admit to alcohol consumption. In order to effectively combat drunk driving, the state needs some means of gathering evidence to deter and prosecute drunk drivers who wind up unconscious. Section 42-4-1301.1(8) satisfies that need. Therefore, Hyde's equal protection challenge, like his Fourth Amendment claim, fails.

## IV. Conclusion

¶32 By driving in Colorado, Hyde consented to the terms of the Expressed Consent Statute, including its requirement that he submit to blood-alcohol testing under the circumstances present here. Hyde's statutory consent satisfied the consent exception to the Fourth Amendment warrant requirement. We therefore conclude that in the circumstances presented here, the blood draw was constitutional. Accordingly, we reverse the trial court's suppression order.

**JUSTICE EID** concurs in the judgment, and **CHIEF JUSTICE RICE** and **JUSTICE COATS** join in the concurrence in the judgment.

14

JUSTICE EID, concurring in the judgment.

¶33     I agree with the majority's ultimate disposition in this case and in the two companion cases before the court, People v. Simpson, 2017 CO 25, __ P.3d __, and Fitzgerald v. People, 2017 CO 26, __ P.3d __.  I write separately, however, to explain why I believe the results reached today are consistent with the rationale adopted in Birchfield v. North Dakota, 136 S. Ct. 2160 (2016).  Specifically, Birchfield holds that traditional implied consent statutes such as Colorado's—which deem drivers to have consented to BAC testing as a condition of driving upon the state's roads and impose administrative and evidentiary consequences upon refusal to test—meet the dictates of the Fourth Amendment.  In Birchfield, the Court reasoned that "inferr[ing]" such consent to search is reasonable, essentially as a matter of law, from the statutory "context."  Id. at 2185.  This rationale easily disposes of the cases before us today.  In Hyde, the defendant is deemed by statute to have consented to BAC testing by virtue of driving on the roads, making irrelevant his inability to consent (due to his unconscious state) at the scene.  In Simpson, there is no impermissible coercion in informing the defendant that he has been deemed to have consented to testing as a result of driving, with administrative and evidentiary consequences for refusal, given that he was not threatened with criminal sanctions for refusal (the problem in Birchfield).  And in Fitzgerald, there is no Fourth Amendment violation in imposing evidentiary sanctions for refusal to take a test to which the defendant was deemed to have impliedly consented.  Because the majority does not fully embrace and apply this rationale, I respectfully concur only in the judgments it reaches.

¶34 As the majority points out, under Colorado's Expressed Consent law—what other states call "implied consent"—anyone who drives in Colorado "shall be deemed to have expressed such person's consent" to the provisions of section 42-4-1301.1, including taking a BAC test, either of breath or blood, when required to do so by a law enforcement officer. § 42-4-1301.1(1), (2)(a), C.R.S. (2016). If the driver refuses to submit to such testing, his or her driver's license is revoked for a year or more, § 42-2-126(3)(c)(I), C.R.S. (2016), and evidence of such refusal is admissible at a subsequent trial for certain driving-related offenses. § 42-4-1301(6)(d), C.R.S. (2016). If the driver is unconscious, he or she "shall be tested" through administration of a blood test. § 42-4-1301.1(8), C.R.S. (2016). In this instance, Hyde was unconscious; once at the hospital, his blood was drawn and tested.

¶35 Hyde argued before the trial court that the results of his blood test should be suppressed because he was given no opportunity to refuse the test due to his unconscious state. The trial court agreed. The court relied on the plurality opinion of this court in People v. Schaufele, 2014 CO 43, ¶ 28, 325 P.3d 1060, 1066 (plurality opinion), which appeared to cast doubt on the validity of implied consent as an adequate justification under the Fourth Amendment. Specifically, the Schaufele plurality stated, in a passage cited by the trial court in this case, "[T]he trial court [in Schaufele] correctly noted that, notwithstanding Missouri's implied consent statute, the Supreme Court presumed in [Missouri v. McNeely, 133 S. Ct. 1552 (2013) (plurality opinion)] that the Fourth Amendment requires a search warrant before a blood draw, absent exigent circumstances. And it correctly noted that our own case law makes clear

2

that Colorado's express consent statute does not abrogate constitutional requirements." Schaufele, ¶ 28, 325 P.3d at 1066 (emphasis added) (citation omitted). This passage from the Schaufele plurality seems to suggest that implied consent was not sufficient to justify a warrantless blood draw, and that instead the police would have to rely on exigent circumstances. See also id. at ¶ 22, 325 P.3d at 1065 ("Like Schaufele, the defendant [in McNeely] was subject to a statutory implied consent law due to his operation of a motor vehicle. Yet he successfully moved to suppress his blood draw results [on the ground that] . . . the police officer who ordered it did not attempt to secure a warrant." (citation and footnote omitted)). But see id. at ¶ 42, 325 P.3d at 1068 (stating that the plurality "[did] not mean to imply that a warrant is always necessary in involuntary blood draw cases").

¶36 Today, the majority implicitly—and correctly, in my view—rejects this implication from Schaufele, recognizing that "[i]n Birchfield, the Court endorsed the use of implied consent laws like Colorado's Expressed Consent Statute to secure BAC evidence in compliance with the Fourth Amendment." Maj. op. ¶ 21; see also id. at ¶ 29 n.5 (noting that there is no conflict between the result it reaches and the Schaufele plurality's statement that the expressed consent statute does not abrogate constitutional requirements, as those requirements are met by the statute). But the majority goes no further in analyzing Birchfield's rationale for its approval of implied consent statutes like Colorado's. See, e.g., maj. op. ¶¶ 21, 25 (noting Birchfield's approval of implied consent laws).

3

¶37    The Court in Birchfield reasoned that traditional implied consent laws like Colorado's—namely, laws that deem a person to have consented to BAC testing by virtue of driving, with administrative and evidentiary consequences for refusal to test—are reasonable under the Fourth Amendment. The initial question before the Court was whether a blood or breath test could be performed consistent with the Fourth Amendment as a search incident to arrest. See 136 S. Ct. at 2174 ("We therefore consider how the search-incident-to-arrest doctrine applies to breath and blood tests incident to such arrests."). The Court stated that breath tests do not implicate significant privacy concerns, emphasizing that "the physical intrusion [of the breath test] is almost negligible." Id. at 2176. Blood tests, by contrast, are significantly more intrusive, and "place[] in the hands of law enforcement authorities a sample that can be preserved and from which it is possible to extract information beyond a simple BAC reading." Id. at 2178. The Court went on to consider the need for BAC testing, which it determined to be "great." Id. at 2184. "Having assessed the effect of BAC tests on privacy interests and the need for such tests," the Court concluded that a warrantless breath test, but not a warrantless blood test, could be conducted as a search incident to arrest. Id. at 2184–85.

¶38    Because the warrantless blood test could not be justified by the search-incident-to-arrest doctrine, the Court moved on to consider the state's alternate argument: that the test was justified by the driver's implied consent. Id. at 2185. In considering whether the driver's implied consent could justify the warrantless blood draw in question, the Court stated that "[i]t is well established that a search is reasonable when

4

the subject consents." Id. (citing Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973)). Further, the Court stated that "sometimes consent to a search need not be express but may be fairly inferred from context." Id. For this proposition, the Court cited, inter alia, Marshall v. Barlow's, Inc., 436 U.S. 307 (1978), which involved implied consent principles as applied to highly regulated industries.[6]

¶39 From here, the Birchfield Court emphasized: "Our prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply. See, e.g., [McNeely and South Dakota v. Neville, 459 U.S. 553 (1983)]. Petitioners do not question the constitutionality of those laws, and nothing we say here should be read to cast doubt on them." 136 S. Ct. at 2185 (emphasis added). The problem with using implied consent in the case before it, however, was that North Dakota—unlike Colorado—"impose[d] criminal penalties on the refusal to submit to such a test." Id. According to the Court, "[t]here must be a limit to the consequences to which motorists may be deemed to have consented by virtue of a decision to drive on public roads," id., and North Dakota had exceeded that limit by imposing a criminal sanction on refusal.

¶40 Importantly for the cases before us today, the Birchfield Court reaffirmed the validity of implied consent statutes that "infer[]" consent from the "context" of the search. Id. For example, the Court cited to Marshall, where the question was whether implied consent could justify an OSHA search of a plumbing business. OSHA pointed

---

[6] The Birchfield Court also cited Florida v. Jardines, 133 S. Ct. 1409, 1415–16 (2013); the context there involved the front porch, where one implicitly consents to visitors knocking on the door, but not to visitors conducting a dog sniff.

5

to cases involving highly regulated industries where there is "such a history of government oversight that no reasonable expectation of privacy . . . could exist for a proprietor over the stock of such an enterprise." Marshall, 436 U.S. at 313 (citation omitted). The Court recognized that "[t]he businessman in a regulated industry in effect consents to the restrictions placed upon him." Id. (citation omitted). The Court rejected OSHA's reliance on this rationale, however, reasoning that a plumbing business would fall outside the category of highly regulated businesses in which consent to a search is implied. Id.

¶41 In both Birchfield and Marshall, the Court looked at the overall statutory regime in which the search was to take place, not the individual facts at the time the search was conducted, to determine whether implied consent would apply. To use Birchfield's terminology, the Court essentially "inferred" consent as a matter of law from the "context." Driving on the roads and being engaged in a highly regulated industry are two such contexts from which consent can be inferred. Reinforcing this point, the Birchfield Court remanded the case involving the North Dakota defendant for further proceedings to determine whether his consent was voluntary under the totality of the circumstances. 136 S. Ct. at 2186. Because implied consent could not support the search given the impermissible threat of criminal sanction, the Court left it to the state court on remand "to reevaluate [the defendant's] consent given the partial inaccuracy of the officer's advisory." Id.

¶42 Applying this reasoning here, the defendants' arguments in the three cases before us must fail. In this case, Hyde emphasizes that he was unconscious at the time

6

and was incapable of consenting to the blood draw at the time it was performed. But in light of <u>Birchfield</u>, his consent is implied from the context of driving. In particular, section 42-4-1301.1(2)(a)(I) states that "[a] person who drives a motor vehicle upon the streets and highways and elsewhere throughout this state <u>shall be required</u> to take and complete, and to cooperate in the taking and completing of, any test or tests of the person's breath or blood . . . when so <u>requested and directed</u> by a law enforcement officer." (Emphasis added). Further, in the case of the unconscious driver such as Hyde, the driver is not "requested and directed" to take the test, but rather "shall be tested." § 42-4-1301.1(8). Therefore, when the officers arrived at the scene, Hyde had already been deemed to have consented to a blood draw by virtue of the fact that he drove on the roads of Colorado. Under <u>Birchfield</u>, nothing more was necessary to comport with the Fourth Amendment. Thus, contrary to the trial court's ruling in this case, it was of no consequence that Hyde was not in a position to consent at the scene, nor was it necessary for the police to obtain a warrant. Accordingly, the trial court's suppression order should be reversed.

¶43 This rationale similarly disposes of the companion cases we address today. In <u>Simpson</u>, for example, the trial court's suppression order was based on the same misunderstanding as the trial court's ruling in this case—namely, that implied consent is insufficient to satisfy the dictates of the Fourth Amendment. The trial court reasoned that Simpson's consent could not be voluntary because he was presented with a form stating that, by driving in Colorado, he had consented to taking a BAC test, and would face administrative and evidentiary consequences for refusal. Hearing Tr. 89 (finding

7

that the form contained "express threats and statements that [Simpson] already consented to submit to a blood and breath test" and stating that "[u]nder those circumstances, . . . [the court] [has] to find that this does not constitute valid consent for [constitutional purposes]").

¶44    The trial court's reasoning is misguided because there can be no coercion in a form that accurately summarizes the relevant provisions of Colorado's implied consent statute—namely, one that informs the defendant that a driver is deemed to have consented to a BAC test by virtue of driving, and will face evidentiary and administrative consequences for refusing to be tested.  Under Birchfield, implied consent is permissible here because, as noted above, the Colorado statute, unlike North Dakota's, does not impose criminal sanctions for refusal to test, and Simpson makes no claim that he was threatened with criminal sanctions.  Therefore, the majority should reverse the trial court's suppression order on the ground that, because the form accurately summarized the relevant (and constitutionally sufficient) provisions of Colorado's implied consent statute, it could not be coercive.  Instead, the majority holds that there was no need for the trial court to assess Simpson's consent at the time of his encounter with law enforcement, Simpson, 2017 CO 25, ¶ 25, __ P.3d __, which is true, but only because the form was not coercive.  See, e.g., Birchfield, 136 S. Ct. at 2186 (remanding case for voluntariness determination where implied consent could not support search given threat of criminal sanction).

¶45    Finally, in Fitzgerald, Fitzgerald argues that the introduction of evidence of his refusal to test at his trial for driving while ability impaired violated the Fourth

8

Amendment. Fitzgerald's argument must be rejected because, as noted above, the Birchfield Court held that statutes that imply consent to BAC testing from the act of driving, as well as impose evidentiary consequences for refusal, are reasonable under the Fourth Amendment. Therefore, the Supreme Court has more than "all but said" as much, as the majority concludes, Fitzgerald, 2017 CO 26, ¶ 26, __ P.3d __; it has said it. Accordingly, I would, on this ground, affirm the district court's opinion affirming the county court's disposition of the case.

¶46     In the end, these three cases raise the same question: does Colorado's statute providing for implied consent satisfy the dictates of the Fourth Amendment under the circumstances of these cases. All three should be resolved with the same answer: yes. I therefore concur only in the judgment reached by the majority in the three cases.

I am authorized to state that CHIEF JUSTICE RICE and JUSTICE COATS join in this concurrence in the judgment.